Argued and submitted May 3, 1996; resubmitted June 11, 1998, sentence of death vacated and case remanded to circuit court for further proceedings October 7, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL MARTIN McDONNELL,
*Appellant.*

## (CC J8500004; SC S41231)

987 P2d 486

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the briefs was Sally L. Avera, Public Defender.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the briefs were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and David B. Thompson, Assistant Attorney General.

Before Carson, Chief Justice, Gillette, Van Hoomissen, Durham, and Leeson, Justices.*

DURHAM, J.

---

* Unis, J., retired June 30, 1996, and did not participate in this decision; Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision. Kulongoski and Riggs, JJ., did not participate in the consideration or decision of this case.

## DURHAM, J.

Defendant appeals from a judgment that imposed a sentence of death following his conviction for aggravated murder. The judgment is subject to automatic review in this court. ORS 163.150(1)(g). For the reasons that follow, we vacate the sentence of death and remand this case to the circuit court for further penalty-phase proceedings.

Defendant assigns error to the circuit court's refusal to permit the jury, under ORS 163.150(5)(a) (1993) (quoted below), to consider the option of sentencing defendant to life in prison without the possibility of parole and, consistent with the *ex post facto* provisions of the state and federal constitutions, to permit defendant to waive any objection to the jury's consideration of that option.[1] We restate below the procedural history of the case that pertains to that assignment.

On December 22, 1984, defendant killed Joey Keever. The facts regarding that crime are set out in *State v. McDonnell*, 313 Or 478, 481-82, 837 P2d 941 (1992) (*McDonnell II*). At that time, ORS 163.150 (1985) (Or Laws 1985, ch 3, § 3, which became effective December 6, 1984) provided a choice between two possible sentences for aggravated murder: death or life imprisonment with a 30-year minimum term of imprisonment (ordinary life). The statute required the jury in an aggravated murder sentencing proceeding to answer three questions. If the jury answered all the questions in the affirmative, then the court was required to sentence the defendant to death. If the jury answered any question in the negative, then the court was required to impose a sentence of ordinary life.[2]

---

[1] Article I, section 21, of the Oregon Constitution, provides, in part: "No *ex-post facto* law * * * shall ever be passed * * *." Article I, section 10, of the United States Constitution, provides, in part: "No State shall * * * pass any * * * ex post facto Law * * *." For a discussion of the history of the Oregon *ex post facto* clause, see *State v. Cookman*, 324 Or 19, 25-31, 920 P2d 1086 (1996).

[2] ORS 163.150 (1985) provided, in part:

"(1) Upon a finding that the defendant is guilty of aggravated murder, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment or death. * * *

"(2) Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

In 1988, a jury found defendant guilty of aggravated murder in Keever's death and answered affirmatively the three death-penalty questions. Accordingly, the court sentenced defendant to death. On direct review, this court vacated the judgment and remanded the case to permit the trial court to consider whether defendant should be permitted to plead guilty pursuant to a plea agreement. *State v. McDonnell*, 310 Or 98, 794 P2d 780 (1990) (*McDonnell I*).

On remand from *McDonnell I*, the circuit court reinstated the judgment and sentence of death. On a second direct review, this court in 1992 affirmed the conviction for aggravated murder but vacated the sentence of death and remanded the case for further proceedings, because the trial court's instructions on mitigating evidence during the penalty phase were inadequate. *McDonnell II*, 313 Or at 506. This appeal is from those proceedings.

In 1989 and 1991, the legislature adopted amendments to Oregon's death-penalty statute that were in effect during the penalty-phase proceeding on remand from *McDonnell II*. The 1989 amendments increased the number of available sentencing options for aggravated murder by adding the choice of life imprisonment without the possibility of release or parole (true life). Or Laws 1989, ch 720, §§ 1, 2.

---

"(a) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(b) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. In determining this issue, the court shall instruct the jury to consider any mitigating circumstances offered in evidence, including, but not limited to, the defendant's age, the extent and severity of the defendant's prior criminal conduct and the extent of the mental and emotional pressure under which the defendant was acting at the time the offense was committed; and

"(c) If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

"* * * * *

"(5) If the jury returns an affirmative finding on each issue considered under this section, the trial judge shall sentence the defendant to death. If the jury returns a negative finding on any issue submitted under this section, the trial judge shall sentence the defendant to imprisonment for life in the custody of the Corrections Division as provided in ORS 163.105."

The 1991 amendments added a procedure governing imposition of a sentence for aggravated murder after a reviewing court sets aside a death sentence and remands the case to the trial court. Or Laws 1991, ch 885, § 2. In this opinion, we refer to that penalty-phase proceeding on remand as the remand proceeding. As a consequence of those amendments, at the time of defendant's remand proceeding, ORS 163.150 (1993) provided, in part:

"(1)(a)   Upon a finding that the defendant is guilty of aggravated murder, the court, except as otherwise provided in subsection (3) of this section, shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment, as described in ORS 163.105(1)(c), life imprisonment without the possibility of release or parole, as described in ORS 163.105(1)(b), or death. * * *.

"(b)   Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

"(A)   Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B)   Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

"(C)   If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

"(D)   Whether the defendant should receive a death sentence.

"* * * * *

"(f)   If the jury returns an affirmative finding on each issue considered under paragraph (b) of this subsection, the trial judge shall sentence the defendant to death.

"* * * * *

"(2)(a)   Upon the conclusion of the presentation of the evidence, the court shall also instruct the jury that if it reaches a negative finding on any issue under subsection

(1)(b) of this section, the trial court shall sentence the defendant to life imprisonment without the possibility of release or parole, as described in ORS 163.105(1)(b), unless 10 or more members of the jury further find that there are sufficient mitigating circumstances to warrant life imprisonment, in which case the trial court shall sentence the defendant to life imprisonment as described in ORS 163.105(1)(c).

"(b)  If the jury returns a negative finding on any issue under subsection (1)(b) of this section and further finds that there are sufficient mitigating circumstances to warrant life imprisonment, the trial court shall sentence the defendant to life imprisonment in the custody of the Department of Corrections as provided in ORS 163.105(1)(c).

"* * * * *

"(5)  Notwithstanding subsection (1)(a) of this section, the following shall apply:

"(a)  If a reviewing court finds prejudicial error in the sentencing proceeding only, the court may set aside the sentence of death and remand the case to the trial court. No error in the sentencing proceeding shall result in reversal of the defendant's conviction for aggravated murder. Upon remand and at the election of the state, the trial court shall either:

"(A)  Sentence the defendant to imprisonment for life in the custody of the Department of Corrections as provided in ORS 163.105(1)(c); or

"(B)  Impanel a new sentencing jury for the purpose of conducting a new sentencing proceeding to determine if the defendant should be sentenced to:

"(i)  Death;

"(ii)  Imprisonment for life without the possibility of release or parole as provided in ORS 163.105(1)(b); or

"(iii)  Imprisonment for life in the custody of the Department of Corrections as provided in ORS 163.105(1)(c).

"* * * * *

"(d) The new sentencing proceeding shall be governed by the provisions of subsections (1) and (2) of this section. * * *.

"(e) The provisions of this section are procedural and shall apply to any defendant sentenced to death after December 6, 1984."

ORS 163.150(5)(a) (1993) required the trial court, at the state's election, to submit to a new jury the sentencing choices of death, true life, and ordinary life. The jury was required to answer four, rather than three, death-penalty questions, but the court still was obligated to sentence defendant to death if the jury answered the four questions in the affirmative. If the jury answered any question in the negative, then the court was required to sentence defendant to true life imprisonment, unless 10 or more jurors found that ordinary life imprisonment was the appropriate sentence. In the latter case, the court was required to sentence the defendant to ordinary life. As noted, the legislature made the 1991 amendments regarding resentencing after remand applicable to "any defendant sentenced to death after December 6, 1984." ORS 163.150(5)(e).

Before the start of the remand proceeding following *McDonnell II*, defendant asked the court to apply ORS 163.150(5) (1993), not the former statute that had been in effect at the time of defendant's crime. Defendant also stated that he waived any objection, including an *ex post facto* objection, to the application of ORS 163.150(5) (1993) to the remand proceeding. The state acquiesced in defendant's request to apply ORS 163.150(5) (1993).[3]

The trial court refused to apply ORS 163.150(5) (1993) to the remand proceeding. It reasoned, first, that it was obligated to sentence defendant under the law in effect at the time of his crime in 1984, not under ORS 163.150(5) (1993), and, second, that a defendant is not entitled to waive an *ex post facto* objection to a post-offense amendment to the

___

[3] After arguing initially that *State v. Wille*, 317 Or 487, 858 P2d 128 (1993), had held that the true life sentence was inapplicable, the state ultimately agreed to defendant's request that the court should apply ORS 163.150(5) (1993), including the true life sentence option, but on the condition that defendant agree to the *ex post facto* waiver terms that the state proposed. Defendant agreed to those terms.

death-penalty statute. The court then convened the remand proceeding. The jury returned a verdict in which it answered affirmatively the four questions set out in ORS 163.150(1)(b). The court again sentenced defendant to death. This appeal followed.

Defendant contends that the true life option applies to the remand proceeding in this case by reason of ORS 163.150(5) (1993); that this court's decision in *State v. Wille*, 317 Or 487, 858 P2d 128 (1993), which addressed an *ex post facto* issue under ORS 163.150(2) (1989), does not preclude application of ORS 163.150(5) (1993) in this case; and that, in any event, defendant was entitled to waive his potential *ex post facto* objection to the application of the true life option to his case. Defendant also argues that *Wille* was decided incorrectly. The state, citing *Wille*, responds that the trial court's action was not erroneous, because applying the true life option in the remand proceeding to a crime that predated the legislature's adoption of the true life option in 1989 would constitute an *ex post facto* violation. The state also asserts that the trial court was not obligated to accept defendant's *ex post facto* waiver and that defendant's waiver was insufficient.

We begin by acknowledging that the legislature generally has plenary authority to enact laws governing matters of criminal procedure and the sentences for criminal offenses, subject to applicable constitutional restrictions. *See State v. Baker*, 328 Or 355, 358, 976 P2d 1132 (1999) ("Criminal procedure is a subject over which the legislature generally has plenary authority, subject to constitutional restrictions."). The prohibition on *ex post facto* laws in Article I, section 21, of the Oregon Constitution, is one pertinent constitutional restriction. Before we assess whether the constitutional prohibition against *ex post facto* laws is subject to waiver, it first is necessary to construe the pertinent statutes to determine which statute controls the remand proceeding. *See State v. Lowry*, 295 Or 337, 343, 667 P2d 996 (1983) ("As this court has repeatedly stated, the proper sequence begins with an examination of ordinary rules of law and the scope and limits of legal authorization before reaching any constitutional issue * * *."). Only if we first determine that the legislature intended to adopt retrospective legislation that applies to

defendant's 1984 crime would we proceed to consider whether defendant was entitled to, and did, waive a constitutional *ex post facto* objection. Our initial inquiry, therefore, is a question of statutory interpretation to which the methodology described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), applies.

ORS 163.150(5)(a) (1993) required the trial court in a capital case to follow the specified remand procedure only if a reviewing court found prejudicial error in the sentencing proceeding and remanded the case to the trial court. This case was in that precise procedural posture after this court's decision in *McDonnell II*, in which this court stated:

> "* * * Accordingly, we vacate defendant's death sentence and remand this case to the circuit court for further proceedings consistent with this opinion.

> "* * * We find no error as to the guilt phase of defendant's trial. We find error as to the penalty phase of his trial and reverse as to the penalty phase only."

*McDonnell II*, 313 Or at 506.

Because the state on remand elected to conduct a new sentencing proceeding, ORS 163.150(5)(a) (1993) by its terms obligated the trial court to submit to a new jury three sentencing options: death, true life, and ordinary life. ORS 163.150(5)(e) made that remand procedure applicable "to any defendant sentenced to death after December 6, 1984." Unquestionably, defendant's case met that requirement because, at the time of the remand proceeding in 1994, defendant had been sentenced to death two times after December 6, 1984.

The trial court declined to apply ORS 163.150(5)(a) (1993), because it interpreted one of our precedents, *State v. Isom*, 313 Or 391, 837 P2d 491 (1992), to impose a general requirement that criminal defendants must be tried and sentenced under the law in effect when the crime was committed. We conclude that the trial court misread *Isom*.

■ The applicability of an amended statute to a pending criminal proceeding is a matter within the legislature's control, subject to *ex post facto* or other constitutional restraints. *See State v. Kephart*, 320 Or 433, 440, 887 P2d 774 (1994)

(amended statute regarding appellate review of criminal sentences applied to criminal cases pending on appeal).

In *Isom*, this court held that a defendant who had been convicted of aggravated murder was not entitled to the benefit of a post-offense statutory amendment that would have precluded an aggravated murder charge. This court stated:

> "* * * 'The power to declare what punishment may be assessed against those convicted of crime is not a judicial, but a legislative, power, controlled only by the provisions of the Constitution.' *State v. Smith*, 128 Or 515, 524, 273 P 323 (1929). Because the power of punishment is legislative, when the legislature changes the punishment for a crime, Oregon courts must apply the sentence that the legislature intended."

*Isom*, 313 Or at 395. The court interpreted the pertinent statute, ORS 161.035(4),[4] and concluded:

> "It is clear from ORS 161.035(4) that the legislature intends that Oregon courts sentence criminal defendants under the statutory scheme in force when a particular criminal act was committed."

*Ibid.* The trial court interpreted that statement broadly to preclude the application of any post-offense amendments to statutes regarding criminal sentences in Oregon criminal proceedings.[5] But that statement carried one import in the

---

[4] ORS 161.035(4) provides:

"When all or part of a criminal statute is amended or repealed, the criminal statute or part thereof so amended or repealed remains in force for the purpose of authorizing the accusation, prosecution, conviction and punishment of a person who violated the statute or part thereof before the effective date of the amending or repealing Act."

[5] This court quoted the statement in *Isom* in *dictum* in *State v. Langley*, 314 Or 247, 254 n 5, 839 P2d 692 (1992), *on recons* 318 Or 28, 31, 861 P2d 1012 (1993). *Langley* concluded ultimately that the *ex post facto* determination in *Wille*, not the statement in *Isom*, precluded retroactive application of the true life sentencing option to the defendant's offense. Similarly, in *State v. Pinnell*, 319 Or 438, 444, 877 P2d 635 (1994), the court in *dictum* stated that *Langley* and *Wille* had held that the true life sentencing option was inapplicable to preenactment offenses.

The *dictum* in *Pinnell* was inaccurate. *Langley* and *Wille* sustained *ex post facto* objections to the retroactive application of the true life sentencing option in the particular circumstances of those cases. The premise for that conclusion was the court's recognition that the legislature made the true life sentencing option apply retroactively to govern in each defendants' case. The court's construction and

context of *Isom*: the legislature did not intend to apply the particular post-offense statutory amendment at issue in that case to the defendant. *Isom* did not announce a free-floating rule of criminal law that courts must apply the law in effect when a defendant committed an offense *regardless* of any later expression of legislative intention that a post-offense statutory amendment should apply instead. Rather, *Isom* confirmed that courts must determine the applicability of a post-offense statutory amendment in a criminal case, including an amendment to the preexisting statutory sentence, by examining, first, the legislature's intention and, second, any pertinent state and federal constitutional restrictions. *Isom* concluded that, subject to constitutional restrictions, "Oregon courts must apply the sentence that the legislature intended." *Ibid.*

In this case, ORS 161.035(4) maintained ORS 163.150 (1985) in force, despite later amendments to ORS 163.150 (1985), for the purpose of authorizing punishment of defendants for crimes committed before the effective date of the amendments. For purposes of our present statutory analysis, ORS 163.150(5)(a) (1993) obviated the need to exercise that authority, because, subject to constitutional restraints, ORS 163.150(5)(a) (1993) prescribed the range of punishment that the court was required to impose in the 1994 remand proceeding. Because ORS 163.150(5)(a) (1993) required the court to impose one of the listed statutory sentences in the remand proceeding, the court had no reason to exercise the authority to punish defendant that ORS 161.035(4) had preserved.

The foregoing statutory analysis demonstrates that the legislature intended that ORS 163.150(5)(a) (1993) would apply to the remand proceeding in this case. That brings us to the state's contention that the trial court's refusal to apply that statute nonetheless was correct, because defendant was not entitled to waive an objection that the retroactive application of ORS 163.150(5)(a) (1993) violates the constitutional prohibition against *ex post facto* laws. In response, defendant

application of the *ex post facto* clauses of the state and federal constitutions, not the statement in *Isom*, prevented the true life option from applying retroactively, as the legislature had required, in those cases.

points out that, at trial, the state did not object (and, in fact, agreed) to the application of the true life option, or argue that defendant could not waive an *ex post facto* objection to the application of the true life option.

As noted, the parties agreed below that the court should apply the true life option and instruct the jury accordingly, but the trial court refused.[6] The court concluded that defendant was not entitled either to waive an *ex post facto* objection or to consent to be sentenced under an *ex post facto* statute.

The issue on appeal is the same issue that the trial court faced when it rejected the parties' mutual request to apply the true life option: If a defendant does not assert an *ex post facto* objection to the retroactive application of the true life sentencing option, as required by the legislature, then does the court err in addressing and deciding the *ex post facto* issue? We address that issue first under Oregon's *ex post facto* provision. For the reasons that follow, we conclude that defendant's conduct waived any *ex post facto* objection and that the court's decision to decline to give effect to defendant's waiver was error.

■ At the outset, we emphasize that ORS 163.150(5)(a) (1993) is the statute that the legislature chose to apply to defendant's remand proceeding even though defendant's offense predated that statute's enactment. This case does not involve an attempt by the parties, by stipulation or otherwise, to induce the court to apply a statute that clearly is inapplicable for reasons apart from its potential vulnerability to an *ex post facto* objection. Parties cannot stipulate, for example, to the retroactive application of a post-offense sentencing statute that the legislature did not make retroactive. *See State v. Lyon*, 304 Or 221, 231, 744 P2d 231 (1987) (parties "may not by stipulation change the law * * *"). This case presents no such issue.

---

[6] Several weeks before requesting that the trial court apply ORS 163.150(5)(a) (1993) in this proceeding, defendant had filed a wide-ranging attack on the constitutionality of the statutes and procedures concerning his continued prosecution for aggravated murder. The court at the time denied his objection that post-offense amendments to ORS 163.150 were *ex post facto*. Defendant subsequently requested the court to apply ORS 163.150(5)(a) (1993) in the remand proceeding. The trial court's denial of that request is the ruling that is now before this court.

The state contends that, because the constitutional *ex post facto* provisions are addressed in text to the lawmaking function, they protect not only a defendant's personal right but also serve to limit legislative power and to uphold the separation of powers. In so arguing, the state seeks to distinguish the right protected by Article I, section 21, of the Oregon Constitution, from other personal constitutional rights that a defendant may waive,[7] and to analogize Article I, section 21, to Article I, section 10 ("[n]o court shall be secret"), which this court has held announces an institutional rule forbidding secret adjudications, not an individual right that one person may waive. *See State ex rel Davey v. Frankel,* 312 Or 286, 289, 823 P2d 394 (1991):

> "[T]he command that '[n]o court shall be secret' is not a statement of an individual right that may be waived or compromised by the individual. * * * Rather it 'is one of those provisions of the constitution that prescribe how the functions of government shall be conducted.' "

We do not agree with the state's argument that Article I, section 21, is analogous to the prohibition against secret courts in Article I, section 10. The text of the two provisions demonstrates that they have materially different objectives. Article I, section 10, specifies a rule for the operation of courts that courts must observe regardless of any choice by an individual to waive or compromise that rule. By contrast, Article I, section 21, addresses the lawmaking function at the time of enactment, not the process of adjudication by courts. That provision bears a greater textual and structural similarity to other provisions of the state constitution that also prohibit the enactment of certain types of laws, such as, for example, Article I, sections 8, 9, and 20, of the Oregon Constitution, which prohibit, respectively, the enactment of certain laws regarding free expression, searches and seizures, and the granting of privileges and immunities. Among other things,

---

[7] The state relies on Article I, section 9, which protects "the *right of the people* to be secure in their persons, houses, papers, and effects"; section 11, which provides that "[i]n all criminal prosecutions, the *accused* shall have * * *" rights, among others, to counsel, to confrontation, and to a jury trial; and section 12, which provides that "[n]o *person* shall be put in jeopardy twice for the same offen[s]e[.]" (Emphasis added.)

the latter constitutional provisions entitle a criminal defendant to seek protection against an attempt by the state to enforce a constitutionally forbidden statute. But the enforceability of those provisions in a criminal proceeding usually depends on the defendant's timely invocation of the constitutional protection that those provisions offer. Those provisions are not a mandate to courts, in any "jurisdictional" sense or otherwise, to strike down or to refuse to enforce statutes that may violate their prohibitions even if the defendant never has claimed their protection. A criminal defendant can waive the protection of those constitutional provisions by failing to invoke them.

■■ Article I, section 21, functions in the same manner. That provision entitles a criminal defendant to invoke it against the state's attempt to enforce an *ex post facto* law. Contrary to the trial court's view, that provision does not obligate a criminal defendant to object to the application, in trial or at sentencing, of a statute that arguably may implicate the *ex post facto* clause. Moreover, that provision does not make the trial court responsible for its enforcement even if the defendant has waived the protection of that provision. As is true in many other legal settings, a criminal defendant may knowingly and intentionally relinquish, and thereby waive, the protection of a pertinent statute or constitutional provision:

> "Rights, even of constitutional dimension, can be waived. *See, e.g., State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992) (illustrating principle—waiver of right to counsel). * * *
>
> "* * * * *
>
> " 'A waiver is an intentional relinquishment or abandonment of a known right or privilege.' *State v. Meyrick, supra*, 313 Or at 132. Although a waiver must be intentional, there is no particular formula for determining whether a waiver has occurred. 'Whether there has been an intentional relinquishment or abandonment of a known right or privilege will depend upon the particular circumstances of each case * * *.' *Ibid*."

*State v. Hunter*, 316 Or 192, 199-201, 850 P2d 366 (1993).

■ Our examination of the circumstances here leads us to conclude that, under the definition of waiver set out in *Hunter*, defendant's decision not to invoke the protection of the *ex post facto* clause in Article I, section 21, in a timely manner against the application of ORS 163.150(5)(a) (1993) in the remand proceeding constituted a waiver of his right to that protection. Defendant made it clear to the trial court that he wanted the jury to consider his case under ORS 163.150(5)(a) (1993), in order potentially to receive a true life sentence. Defendant's arguments to the trial court demonstrate that he was aware that he could invoke his constitutional right to protection against the enforcement of *ex post facto* laws, but that he chose intentionally to relinquish that right. The written waiver that defendant filed, in which he expressed in elaborate terms his desire to waive his constitutional rights, amply confirms that defendant's decision not to invoke his constitutional protection against *ex post facto* laws was an intentional relinquishment of a known right.

■ As the state correctly contends, the *ex post facto* clause also serves important institutional interests, such as the interest in safeguarding the separation of powers, and does not protect only the individual rights of criminal defendants. However, the state's contention does not lead logically to the conclusion that a criminal defendant may not waive the protection of the *ex post facto* clause.

■ As with other constitutional restrictions on the substance of legislation, Article I, section 21, directs the *ex post facto* prohibition at lawmakers at the point of their enactment of a proposed law. *See Cookman*, 324 Or at 26 (discussing characteristics of a prohibited *ex post facto* law). That provision does not invite the enactment of *ex post facto* laws, leaving it solely to the courts to invalidate them in individual cases. *See State v. Robertson*, 293 Or 402, 412 n 10, 649 P2d 569 (1982) (similarly analyzing constitutional restriction on laws restraining the free expression of opinion).

■ Once the legislature has acted, however, constitutional enforcement of the prohibition against *ex post facto* laws depends in the main on the courts and the process of adjudication. Adjudication, in turn, resolves legal and factual issues framed by litigants through familiar legal procedures,

including pleadings, motions, and legal argument. Courts generally confine their judgments to the issues that the litigants have raised and submitted for decision. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (discussing justifications for requiring preservation of claims of error in trial court). Consistent with the adjudicatory process, courts generally will refrain from deciding whether an applicable post-offense sentencing statute is an *ex post facto* law if the criminal defendant has not asserted such a claim.

Returning to the state's argument, we fail to see how adherence by courts to the adjudicatory procedures described above—in particular, refraining from deciding *sua sponte* an *ex post facto* issue that a criminal defendant has waived—somehow will induce the legislature to become less attentive to its responsibility under Article I, section 21, to avoid enacting *ex post facto* laws. The proscription in that provision remains absolute. Consequently, our conclusion that a criminal defendant may waive the constitutional protection against application of *ex post facto* laws does not undermine the doctrine of separation of powers.

■ Finally, the state contends that the trial court was not required to "accept" defendant's waiver of his constitutional protection against *ex post facto* laws. That argument fails to focus properly on the procedural act that effected defendant's waiver. As noted above, defendant sought the application of ORS 163.150(5)(a) (1993) in the remand proceeding. At that point, he asserted no timely objection or claim that that statute *was* an *ex post facto* law. That claim was defendant's to assert, and he did not do so. Defendant's choice effected a waiver of his constitutional protection and eliminated any *ex post facto* issue for decision by the trial court.

■ Having determined that defendant was entitled to, and did, waive the protection against *ex post facto* laws afforded by Article I, section 21, of the Oregon Constitution, we turn to the question whether defendant's waiver of the protection of the *ex post facto* clause in Article I, section 10, of the United States Constitution, is subject to the same analysis. The United States Supreme Court has not decided that

question. However, that Court's pertinent decisions uniformly involve proceedings in which a criminal defendant has asserted that a retrospective statute offends the federal constitutional proscription against *ex post facto* laws. *See, e.g., California Dept. of Corrections v. Morales,* 514 US 499, 115 S Ct 1597, 131 L Ed 2d 588 (1995) (in response to prisoner's habeas corpus proceeding, Court held that retroactive application of post-offense statute decreasing frequency of parole suitability hearings did not violate federal *ex post facto* provision); *Miller v. Florida,* 482 US 423, 107 S Ct 2446, 96 L Ed 2d 351 (1987) (post-offense revision of sentencing guidelines, applied over the defendant's objection, violated federal *ex post facto* clause); *Weaver v. Graham,* 450 US 24, 101 S Ct 960, 67 L Ed 2d 17 (1981) (Court sustained prisoner's *pro se* habeas corpus proceeding challenging retroactive application by prison officials of a post-offense statute reducing accumulation of monthly gain time credits); *Dobbert v. Florida,* 432 US 282, 97 S Ct 2290, 53 L Ed 2d 344 (1977) (the defendant objected, on *ex post facto* grounds, to sentencing under post-offense death-penalty statute; *held*: no *ex post facto* violation occurred because statutory changes were only procedural and, on the whole, ameliorative).

One recent decision implies that a criminal defendant may waive his protection under the federal *ex post facto* clause. In *Lynce v. Mathis,* 519 US 433, 117 S Ct 891, 137 L Ed 2d 63 (1997), the Court held that the cancellation of provisional credits toward release, pursuant to a post-offense statute, violated the federal *ex post facto* clause because the new scheme was retrospective and increased the punishment for the defendant's crime. The Court noted that the petitioner had not advanced his *ex post facto* claim in state court. Rather, he filed his petition for a writ of habeas corpus directly in federal court. The Court also observed that the state respondents had challenged the petitioner's failure to exhaust his state remedies on that issue, but later had abandoned that argument. The Court stated that the petitioner was not required to exhaust his state remedies because the Florida courts already had rejected the same *ex post facto* claim. As a consequence, "exhaustion would have been futile." *Lynce,* 519 US at 436-37 n 4, 117 S Ct at 893 n 4, 137 L Ed 2d at 69 n 4.

The logical import of that discussion in *Lynce* is that a criminal defendant may lose his right to challenge a state statute on *ex post facto* grounds in a federal habeas corpus proceeding by failing to raise that claim in state court, unless the effort to exhaust state remedies would be futile. The only purpose served by that discussion is to confirm that a criminal defendant's federal *ex post facto* protection is subject to loss if not asserted in a timely manner.

The foregoing discussion satisfies us that the United States Supreme Court would conclude that defendant may, and in this case did, waive his federal *ex post facto* protection by choosing not to assert an objection to the application of ORS 163.150(5)(a) (1993) in the remand proceeding. That Court's jurisprudence indicates that defendant's rights under the federal *ex post facto* clause are subject to waiver. We conclude that defendant waived his federal *ex post facto* protection by choosing not to object to the application of ORS 163.150(5)(a) (1993) in the remand proceeding.

■ The trial court's decision not to apply ORS 163.150(5)(a) (1993) in the remand proceeding was not a harmless error. A properly instructed jury might have returned a verdict supporting a sentence other than death. As a consequence, we must vacate the sentence of death and remand the case for further proceedings.

We have examined defendant's other assignments of error. Those assignments either are not well taken or raise issues that may not recur on remand. We decline to address those assignments in greater detail.

The sentence of death is vacated, and the case is remanded to the circuit court for further proceedings.