**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JASON WAYNE ROSE,
              *Petitioner-Appellant,*

          v.

JOAN PALMATEER, Superintendent,
Oregon State Penitentiary,
              *Respondent-Appellee.*

No. 03-35937

D.C. No.
CV-00-01041-REJ

OPINION

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Argued and Submitted
September 17, 2004—Portland, Oregon

Filed January 24, 2005

Before: J. Clifford Wallace, Ronald M. Gould and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Noel Grefenson, Salem, Oregon, for the petitioner-appellant.

Timothy A. Sylwester, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

## OPINION

WALLACE, Senior Circuit Judge:

State prisoner Rose appeals from the district court's denial of his 28 U.S.C. § 2254 petition. He argues that he properly exhausted the claim that his confession and re-enactment of events were unlawfully induced and should have been suppressed, and he contends he did not validly waive his Ex Post Facto Clause objection to his sentence. The district court had jurisdiction pursuant to 28 U.S.C. § 2254(a). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253(a), and we affirm.

I.

Following his arrest, Rose confessed to the robbery and murder of Melissa Meyer and re-enacted the crime for investigating officers. His videotaped re-enactment was admitted at trial. On April 20, 1989, Rose was convicted of aggravated murder and robbery in the first degree. The jury subsequently sentenced him to death. On automatic and direct review, the Oregon Supreme Court affirmed his convictions but vacated his death sentence due to a jury instruction error in the penalty phase and remanded. *State v. Rose*, 810 P.2d 839 (Or. 1991).

To avoid the possibility that he would again receive the death sentence, Rose, with the assistance of counsel, negotiated an agreement with the state pursuant to which he would accept a sentence of life without the possibility of release or parole. The state specifically refused Rose's offer of life with the possibility of parole after 30 years, so Rose's only choice for a settlement to avoid the possibility of the death penalty was life without parole. This "true life" sentence was not authorized under state law until an amendment to Oregon Revised Statutes § 163.105, which became effective after Rose was convicted but before his resentencing took place in 1992. *See* OR. REV. STAT. §§ 163.105, 163.105(5) (1993). This

amendment was made retroactively applicable to Rose because he was a "defendant sentenced to death after December 6, 1984." *Id.* § 163.150(5)(e). Prior to this amendment, the only sentencing options for aggravated murder were death or life in prison with the possibility of parole after thirty years. *See* Or. Rev. Stat. § 163.105 (1987). In *State v. McDonnell*, 987 P.2d 486 (Or. 1999), the Oregon Supreme Court held that a defendant may waive an Ex Post Facto objection to the application of the revised statute, and a court errs if it refuses to allow such application despite a defendant's waiver. *Id.* at 492-93.

On July 31, 1992, a Lane County Circuit Court judge reviewed the terms of the agreement in the presence of the prosecutor, Rose and his counsel, and questioned Rose in order to ascertain whether he understood the nature and consequences of accepting the "true life" sentence. Rose expressly reserved in the plea agreement his rights to appeal and to pursue post-conviction relief.

The Oregon Court of Appeals affirmed without opinion, *State v. Rose*, 865 P.2d 1341 (Or. Ct. App. 1993), and Rose did not seek review by the Oregon Supreme Court. Accordingly, the judgment of the Oregon Court of Appeals became final on January 7, 1993.

On December 29, 1993, Rose filed a petition for post-conviction relief in Marion County Circuit Court, claiming, among other things, that (1) he was denied the effective assistance of trial and appellate counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, and (2) his life sentence was unconstitutional under Article I, § 10 of the U.S. Constitution. The court denied post-conviction relief, and the Oregon Court of Appeals affirmed without issuing an opinion. *Rose v. Maass*, 972 P.2d 1233 (Or. Ct. App. 1999). The Oregon Supreme Court denied review. *Rose v. Maass*, 994 P.2d 130 (Or. 2000). The judgment of the Oregon Court of Appeals became effective on March 2, 2000.

On July 31, 2000, Rose filed a federal habeas petition which included his claim that his confession and re-enactment of the crime were unlawfully induced by a police officer in violation of the Fifth Amendment to the U.S. Constitution. He also asserted that his sentence of life without parole was unconstitutional because it was "brought into effect" after he had been convicted. The district court held Rose had failed to exhaust his Fifth Amendment claim in the state courts and had waived any Ex Post Facto objection to his sentence.

We review de novo the district court's denial of Rose's habeas petition. *Peterson v. Lampert*, 319 F.3d 1153, 1155 (9th Cir. 2003) (en banc). Habeas relief is not allowed unless the state court adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## II.

**[1]** Rose argues that his confession and re-enactment were in violation of his rights under the Fifth and Fourteenth Amendments. The district court found that this argument was waived because Rose did not raise this claim on direct appeal or in his state habeas petition. Pursuant to 28 U.S.C. § 2254(b)(1)(A), a federal court may not consider the merits of Rose's Fifth Amendment claim unless he has exhausted all available state court remedies. To satisfy the exhaustion requirement, Rose must have fairly presented this claim in the state courts in order to give them the "opportunity to pass upon and correct alleged violations" of his rights. *Baldwin v. Reese*, 124 S. Ct. 1347, 1349 (2004) (internal quotation marks omitted).

Rose concedes that he never claimed on state direct appeal or in his petition for review in the Oregon Supreme Court that

his re-enactment and confession were induced in violation of the Fifth Amendment. Nor did Rose assert that claim in his state post-conviction petition. However, he contends he "indirectly" exhausted this claim by alleging in his state post-conviction petition before the Circuit Court, the Oregon Court of Appeals, and the Oregon Supreme Court that he was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments (i) when trial counsel failed to argue properly the inadmissibility of his confession and re-enactment, and (ii) when appellate counsel failed to assign error to the trial court's adverse ruling on his motion to suppress. The district court characterized his argument as a request to " 'cut and paste' two separate and distinct claims into one viable claim for relief," and it concluded that "[s]uch a reconstruction is not legally defensible."

In *Peterson*, we held that the petitioner did not fairly present his federal ineffective assistance claim to the Oregon Supreme Court. 319 F.3d at 1154. Although he cited two state court cases which analyzed state and federal right-to-counsel claims, he preceded these citations with an allegation of "inadequate" assistance of counsel under the Oregon Constitution, which is "the usual term referring to the state version of the constitutional right," and did not allege "ineffective" assistance of counsel, which is the term usually used to refer to the federal version. *Id.* at 1157-59. The court reasoned that "the clear language used in Peterson's counseled petition leads us to conclude he made a deliberate, strategic choice not to present the federal issue in his petition." *Id.* at 1159. Furthermore, "a fair reading of Peterson's counseled petition was that the cases were cited only to support a state-law claim." *Id.*

**[2]** In this case, a fair reading of Rose's post-conviction petition is that he deliberately chose, with the assistance of counsel, not to raise the Fifth Amendment claim before the state courts. He only mentioned the alleged unlawfulness of his confession and re-enactment in order to support his inef-

fective assistance claims. Indeed, the Circuit Court in the post-conviction proceedings limited its conclusions to addressing the constitutional adequacy of counsel issues without directly opining on the unlawfulness of the confession and re-enactment.

**[3]** Furthermore, petitioners must plead their claims with considerable specificity before the state courts in order to satisfy the exhaustion requirement. *See, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("[M]ere similarity of claims is insufficient to exhaust"); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001) ("[A] petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is 'self-evident' or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds." (internal citations omitted)); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court").

**[4]** In addition to requiring specificity in pleading the federal nature of a claim, we also require a petitioner to articulate the substance of an alleged violation with some particularity. In *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), we held that although the petitioner had exhausted a claim of ineffective assistance based on counsel's failure to object to several instances of alleged prosecutorial misconduct, the petitioner had not exhausted a related ineffective assistance claim that was premised on counsel's failure to file a motion to recuse the prosecutor based on that same misconduct. *Id.* at 1068 n.2. We held that "it was incumbent upon Petitioner to set forth the alleged failure to file a motion to recuse as an independent constitutional claim in order to give the California Supreme Court a 'full and fair opportunity' to act upon it, rather than

hope that the court would infer this Sixth Amendment claim from the related failure to object." *Id.*

**[5]** Here, although Rose's Fifth Amendment claim is related to his claim of ineffective assistance, he did not fairly present the Fifth Amendment claim to the state courts when he merely discussed it as one of several issues which were handled ineffectively by his trial and appellate counsel. While admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 374 & n.1 (1986) (distinguishing between a Fourth Amendment suppression claim and a Sixth Amendment ineffective assistance claim based on failure to litigate competently the Fourth Amendment issue, and stating that "[w]hile defense counsel's failure to make a timely suppression motion is the primary manifestation of incompetence and source of prejudice advanced by respondent, the two claims are nonetheless distinct, both in nature and in the requisite elements of proof").

In order to prevail on his Sixth Amendment claim, Rose was required to show that his counsel's representation "fell below an objective standard of reasonableness" and that "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). Pursuant to this standard, Rose's Sixth Amendment claim could have been rejected regardless of whether his Fifth Amendment rights were violated. *See Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004) ("Lordi attempts to avoid procedural default by characterizing the Ohio appellate court's disposition of his post-conviction ineffectiveness claim on the prejudice prong as being a ruling on the merits of the [underlying constitutional claim], which would permit this court to review it. This is not correct. By addressing the prejudice of an ineffectiveness claim a court does not bind itself into ruling on the claim's underlying merits"). *Cf. Kim-*

*melman*, 477 U.S. at 382 ("Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim [that is premised on mishandling of the Fourth Amendment issue], a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief").

Indeed, the Circuit Court did not rule directly on the Fifth Amendment issue in the post-conviction case. It stated in its findings of fact that prior to trial, the trial court held a hearing to determine the voluntariness of Rose's confession and re-enactment, and that the trial court found that they were "freely and voluntarily made." As a result, the Circuit Court found that trial counsel's conclusion that he had no basis for a motion to suppress petitioner's statements "was a reasonable exercise of trial counsel's professional skill and judgment." It concluded that Rose's trial and appellate counsel were not constitutionally inadequate. The Circuit Court did not directly hold that Rose's Fifth Amendment rights were not violated.

**[6]** In summary, Rose did not fairly present his Fifth Amendment claim to the state courts. Furthermore, the district court held that this "claim is now procedurally barred by applicable state rules," and that there were no grounds for excusing this procedural default. As Rose does not contest this aspect of the district court's opinion, we hold that the district court did not err in rejecting this claim.

### III.

Rose contends that his sentence violates the Ex Post Facto Clause of the U.S. Constitution, U.S. Const. art. I, § 9, cl. 3, because the true life sentence he agreed to was not authorized by state law at the time he committed the offenses. He argues he did not knowingly waive this claim because he did not understand that his plea agreement at resentencing "turned upon acceptance of a sentence which was not authorized for his crime of conviction."

However, the state court found that Rose "affirmatively stipulated to the imposition of an extra-legal sentence in order to avoid a potential death sentence." We test this finding by analyzing whether the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**[7]** Rose has not shown that the state court's decision involved an unreasonable determination of the facts. *See id.* The record indicates that the judge at resentencing carefully questioned Rose to ensure that he understood the sentence he was accepting:

> [M]y understanding is that you are willing to submit yourself to the sentence of life imprisonment without the possibility of release or parole as set out in ORS 163.105(1)(b), specifically acknowledging that the provisions of ORS 163.150 . . . (5)(e) would apply, which say that the provisions of this section are procedural and shall apply to any defendant sentenced to death after December 6th, 1984. Is that correct, sir?

Rose therefore was not only advised that he was agreeing to a sentence of life without the possibility of release or parole; he was also informed that his sentence was being applied pursuant to section 163.150(5)(e), which authorized the retroactive application of section 163.105(1)(b). In addition, Rose received a substantial benefit as a result of his resentencing agreement: avoidance of a possible death sentence. It would be strange indeed if Rose could raise an Ex Post Facto challenge to a sentence that he affirmatively chose as the more favorable option. On the contrary, that affirmative choice constituted a waiver of his Ex Post Facto claim. *See United States v. Gilcrist*, 106 F.3d 297, 302 (9th Cir. 1997) ("[W]e cannot consider [Gilcrist]'s ex post facto argument because [he], at the sentencing hearing, expressly agreed to the use of the

Guidelines Manual in effect at the time of sentencing. . . . In thus consenting, Gilcrist abandoned his ex post facto argument"). The fact that Rose might not have understood that acceptance of the true life sentence would preclude an Ex Post Facto objection to that sentence does not render Rose's choice unknowing or involuntary. *Cf. United States v. Navarro-Botello*, 912 F.2d 318, 320-21 (9th Cir. 1990) (rejecting the argument that a "plea was involuntary because it is logically impossible to make a knowing and voluntary waiver of unknown rights"; the defendant "knew he was giving up possible appeals, even if he did not know exactly what the nature of those appeals might be" and he "gained a set sentence" in exchange). We have never held that an Ex Post Facto claim cannot be waived unless the defendant specifically understands that he is waiving that particular right, and we will not do so now.

**[8]** Finally, Rose did not preserve his Ex Post Facto objection by reserving his right to appeal his sentence and seek post-conviction relief. The fact that he agreed to his *sentence* distinguishes his situation from *United States v. Groves*, 369 F.3d 1178, 1182 (10th Cir. 2004) (holding Groves was entitled to challenge his sentence on Ex Post Facto grounds after he pleaded guilty without agreeing to a specific sentence, and reserved the right to appeal any "illegal sentence" that may be imposed).

IV.

The district court did not err when it held that Rose failed to exhaust his Fifth Amendment claim, which is now procedurally defaulted. Furthermore, it properly concluded that Rose validly waived his Ex Post Facto objection to his sentence. We therefore affirm the district court's denial of habeas relief.

AFFIRMED.