Argued and submitted November 7, 2003, peremptory writ to issue
February 5, 2004

# GARY TODD STEVENS,
*Petitioner-Relator,*

*v.*

# Stan CZERNIAK,
Superintendent,
Oregon State Penitentiary,
*Defendant-Adverse Party.*

## (CC 99C20086; SC S50103)

84 P3d 140

Kenneth Lerner argued the cause and filed the briefs for petitioner-relator.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for defendant-adverse party. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Marc Sussman, P.C., Portland, filed the brief for *amicus curiae* Oregon Criminal Defense Lawyers Association.

David Sugerman, Paul and Sugerman, P.C., Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

KISTLER, J.

**KISTLER, J.**

This mandamus case arises out of a post-conviction proceeding. Petitioner (the relator in the mandamus case) contends that the trial court impermissibly required him to rely on written submissions to prove his case and to provide pretrial disclosure of his expert witnesses' names and testimony. We conclude that the premise of petitioner's first objection—that the court required him to prove his case by written submissions—is not well taken. We agree, however, that the court lacked authority to order pretrial disclosure of petitioner's expert witnesses' names and testimony. We conclude that a peremptory writ should issue directing the trial court to delete or modify that portion of its order.

Although this litigation has a lengthy history, the dispute that gives rise to this mandamus proceeding can be summarized fairly simply. Petitioner filed a petition for post-conviction relief alleging that his trial counsel had been constitutionally inadequate. In an effort to make the hearing more efficient, the trial court limited the parties' ability to call witnesses at the hearing. The court directed the parties to submit their evidence in written form unless an assessment of a witness's credibility was necessary to resolve a factual dispute. Petitioner objected, explaining that his post-conviction case involved complex factual issues that should be explored through in-court testimony rather than written submissions. He also argued that the court's order impermissibly required pretrial disclosure of his expert witnesses' names and testimony.[1]

To clarify its ruling, the trial court entered a trial management order and later an amended trial management order. After the trial court entered the amended trial management order, petitioner asked this court to issue an alternative writ of mandamus. Specifically, petitioner sought relief from the rulings in the amended trial management

---

[1] Petitioner's counsel told the trial court that he intended to offer expert testimony on three issues: (1) the adequacy of petitioner's legal representation below; (2) whether the conduct of prior counsel conformed to bar disciplinary rules and ethical requirements; and (3) battered women's syndrome.

order that (1) "compell[ed] pretrial disclosure of attorney-client privileged information in the form of affidavits of expert witnesses' opinions and required deposition testimony"; (2) directed that "the record [be] held open after the trial date to permit Defendant-Adverse Party additional time in which to take further depositions and produce responsive evidence"; and (3) "refus[ed] Petitioner-Relator the right to present relevant live expert witness testimony at his post-conviction hearing."

This court issued an alternative writ of mandamus directing the trial court "to vacate the Amended Trial Management Order of December 2, 2002, and enter a trial management order consistent with the relief sought in the petition, or in the alternative to show cause for not doing so." In response to the alternative writ, the trial court issued a second amended trial management order. In a cover letter to counsel, the court stated that it believed that the second amended trial management order "is consistent with the relief sought in the Petition for Alternative Writ of Mandamus."

The second amended trial management order begins by reciting a series of findings. The fifth finding provides that, "[w]here a specific credibility question exists between two witnesses on a factual matter, live testimony will be allowed." The order then states in, part:

"1.   Petitioner's Motion for Reconsideration is granted in part. The findings and Orders announced on August 14, 2002 and on November 6, 2002 are clarified and supplemented as indicated herein.

"* * * * *

"3.   The parties are ordered within 21 days to supply the court with the names of the witnesses to be called at trial. Counsel shall summarize the substance of each witness' expected testimony with an explanation of how that testimony relates to the issues raised by the pleadings. The summary will be used by the court in working with the parties to make a determination whether the witness should appear and testify in person, or whether a stipulation of counsel as to the witness' testimony can be achieved, or an affidavit of the witness would be sufficient.

"4.   Prior to trial, opposing counsel may depose any witness who has provided an affidavit, and so perpetuate the witness' cross-examination for the consideration of the court at the post conviction trial. As in any other case, the court may order that the record be left open at the conclusion of trial for the receipt of additional evidence in the event of any unexpected or surprise witness.

"*  *  *  *  *

"7.   At trial, testimony shall be presented in the form of affidavits, deposition testimony and live testimony as described herein, except as expressly provided otherwise by further order of this court, and upon good cause shown."

The trial court also issued an order vacating the amended trial management order and replacing it with the second amended trial management order.

Although the trial court thought that the second amended trial management order complied with the alternative writ, petitioner argues that it does not do so. He raises two objections to the order. First, he contends that the order impermissibly limits his right to call live witnesses. He argues that, under the terms of the order, he can call live witnesses only if an assessment of the witness's credibility is necessary to resolve a disputed issue of material fact. Second, petitioner argues that the second amended trial management order impermissibly requires pretrial disclosure of his expert witnesses' names and testimony.[2]

We begin with petitioner's first objection. Paragraph 3 of the second amended trial management order sets out a process for the court and counsel to follow in determining the form in which the parties will submit their evidence. That paragraph directs counsel to "summarize the substance of each witness' expected testimony with an explanation of how that testimony relates to the issues raised by the pleadings." The paragraph then provides that the summaries "will be

---

[2] Petitioner raises another issue in his opening brief. He asks us to order that the trial judge recuse himself. That separate issue is not fairly within the scope of the alternative writ. See State ex rel Kashmir Corp. v. Schmidt, 291 Or 603, 606 n 1, 633 P2d 791 (1981) (stating that alternative writ functions as complaint). Neither is it a matter that fairly can be said to lie within the expected relief from the matters that are within the scope of the writ. Therefore, we do not address it.

used by the court in working with the parties to make a determination whether the witness should appear and testify in person, or whether a stipulation of counsel as to the witness' testimony can be achieved, or an affidavit of the witness would be sufficient."

Having considered the terms of the second amended trial management order, we conclude that it does not have the effect that petitioner perceives. Paragraph 3 describes a general process by which the court and the parties will work together to identify which testimony the parties will present through live witnesses, by stipulation, and in writing. Unlike the trial court's earlier orders, the terms of the second amended trial management order leave the result of that process open.

Petitioner argues, however, that we should read the order in light of the findings that precede it. As noted, one finding states that, "[w]here a specific credibility question exists between two witnesses on a factual matter, live testimony will be allowed." Given that finding, petitioner argues that the apparently open-ended process described in paragraph 3 will lead ineluctably to one conclusion: He may not call a witness to testify unless the witness's credibility bears on a disputed factual issue. Petitioner reads too much into the court's finding. That finding states one circumstance in which the court *will* allow live testimony; it does not exhaust those circumstances. Given the wording of the second amended trial management order,[3] we decline to assume that the trial court will permit live testimony only in the one circumstance that it mentioned.

Petitioner also argues that we should read paragraph 3 in light of earlier statements that the court made. Those statements make clear, he contends, that the court will allow witnesses to testify only in very limited circumstances. The terms of the written order, however, control over the

---

[3] The amended trial management order contained the following finding: "Where a specific credibility question exists between two witnesses on a factual matter, live testimony will be allowed. *Otherwise, testimony will be by deposition and affidavit.*" (Emphasis added.) The finding in the second amended trial management order omits the emphasized sentence, supporting the conclusion that the trial court will allow live testimony in other circumstances.

court's earlier statements. *See State v. Swain / Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974) (stating principle). Moreover, the court entered the second amended trial management order in response to the alternative writ and in the stated belief that the order complied with the writ. Even if we were to consider the order's context, we cannot ignore the fact that the second amended trial management order reflects the court's stated intent to provide petitioner with the relief that he sought in the alternative writ.[4]

In short, the second amended trial management order leaves the trial court with discretion to determine the form in which the parties will submit "each witness['s]" testimony; it does not predetermine how the court will exercise its discretion. We assume that, consistently with paragraph 3 of the second amended trial management order, the trial court will not impose the blanket limitation on calling live witnesses that the amended trial management order did. We also assume that the trial court will exercise sound discretion in implementing the second amended trial management order to ensure that the parties have a full and fair opportunity to present their evidence. At this point in the process, we cannot say that this aspect of the second amended trial management order is unlawful.[5]

Petitioner challenges a second aspect of the second amended trial management order. He contends that the order impermissibly requires pretrial disclosure of the identity of his expert witnesses and the substance of their testimony. Defendant does not contend that the trial court may require that disclosure; rather, he argues that the order does not have that effect. We begin with the terms of the order and

---

[4] We also note that, in entering the amended trial management order, the trial court agreed with defendant that ORS 138.580 authorized it to require petitioner to submit his evidence solely in written form unless a disputed factual issue turned on a witness's credibility. Defendant now acknowledges that neither ORS 138.580 nor ORS 138.620(2) gives a trial court authority to tell the parties how to present their evidence.

[5] We recognize that the trial court may deny petitioner the right to call some of his witnesses to testify. We also recognize that, depending on the circumstances, such rulings may be erroneous. At this juncture, however, it would be premature to speculate on what the court's specific rulings will be or whether the circumstances will justify them. If the court errs, appeal remains an important avenue for resolving any remaining or nascent issues.

then turn to the question whether the court had authority to enter it.

As noted, the second amended trial management order requires both parties, in advance of trial, to supply the court with the names of the witnesses to be called at trial, to summarize the substance of "each witness' expected testimony," and to explain how that testimony relates to the issues raised by the pleadings. It then provides that the court and the parties will work together to determine the form that the evidence will take. The second amended trial management order contains no exception for expert witnesses; it requires the parties to disclose the names and a summary of the testimony of "each witnes[s]" that they expect to call.[6]

By its terms, the second amended trial management order requires pretrial disclosure of petitioner's experts' names and the substance of their testimony. Defendant argues, however, that the second amended trial management order "expressly incorporates the 'findings and orders' contained" in the amended trial management order. Specifically, defendant contends that a paragraph in the amended trial management order that treated expert witnesses differently[7] remains in effect, and he argues that that paragraph cures the defect that petitioner identifies. Defendant misperceives what the second amended trial management order says.

Paragraph 1 of the second amended trial management order states: "The findings and Orders announced on August 14, 2002 and on November 6, 2002 are clarified and supplemented as indicated herein." The trial court announced its findings orally during a hearing on August 14,

---

[6] Paragraph 4 of the order provides that "the court may order that the record be left open at the conclusion of the trial for the receipt of additional evidence in the event of an unexpected or surprise witness." Petitioner's expert witnesses, however, are neither unexpected nor a surprise.

[7] Paragraph 4 of the amended trial management order provided:

"Prior to trial, counsel shall exchange the affidavits of witnesses. Affidavits shall be exchanged at such time as the parties and the Court mutually agree. In the event that counsel chooses not to exchange the identity and affidavits of expert witnesses in advance of trial, the trial record may be left open to allow the opposing party to rebut the experts' testimony. Rebuttal testimony will be in the form of deposition and affidavit unless the parties and the Court agree otherwise."

2002, and issued a letter to the parties on November 6, 2002. The trial court did not issue the amended trial management order until December 2, 2002. The second amended trial management order does not refer to, much less incorporate, the terms of the amended trial management order.[8] Rather, the trial court entered an order vacating the amended trial management order.

Because the second amended trial management order requires pretrial disclosure of petitioner's experts' names and the substance of their testimony, we turn to the question whether Oregon law authorized the trial court to require petitioner to disclose that information in advance of trial. Petitioner contends, and defendant does not dispute, that the trial court lacked authority to do so. For the reasons set out below, we agree.

■ ■   We note, as a threshold matter, that the Oregon Rules of Civil Procedure apply to post-conviction proceedings. *Mueller v. Benning*, 314 Or 615, 621 & n 6, 841 P2d 640 (1992). We also note that, in a civil action, a party has no obligation to disclose information to another party in advance of trial unless the rules of civil procedure or some other source of law requires the disclosure. *See State ex rel Union Pacific Railroad v. Crookham*, 295 Or 66, 68-69, 663 P2d 763 (1983) (stating principle). We accordingly turn to the question whether the rules of civil procedure require pretrial disclosure of an expert's name and the substance of the expert's testimony.

Both petitioner and *amicus* Oregon Trial Lawyers Association focus on ORCP 36, and we begin with the text and context of that rule. *See Pamplin v. Victoria*, 319 Or 429, 433, 877 P2d 1196 (1994) (applying statutory construction methodology to rules of civil procedure). Petitioner notes that, although the text of ORCP 36 does not address expert discovery specifically, one subsection of the rule bears on that

---

[8] In its November 6, 2002, letter, the trial court recognized that it could not require petitioner to disclose his expert witnesses in advance of trial. The terms of the second amended trial management order are inconsistent with that recognition, however, and we are left with the terms of the order. *See Swain/Goldsmith*, 267 Or at 530 (stating principle).

issue. That subsection defines the scope of discovery and provides that, "[f]or all forms of discovery, parties may inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery or the claim or defense of any other party." ORCP 36 B(1).

It may be that the text of that subsection, if read in isolation, could be interpreted to permit expert discovery if it is (1) relevant and (2) not privileged. As the court has reiterated, however, text should not be read in isolation but must be considered in context. *State v. Barrett*, 331 Or 27, 32, 10 P3d 901 (2000); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). In this case, the context cuts in a different direction.

██ Context includes other provisions of the same statute, the session laws, and related statutes. *Owens v. Maass*, 323 Or 430, 434, 918 P2d 808 (1996); *PGE*, 317 Or at 611. It also includes "the preexisting common law and the statutory framework within which the law was enacted." *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998). In interpreting the rules of civil procedure, context may include the federal counterparts of the Oregon rules. *See Pamplin*, 319 Or at 433 (considering, at first level of analysis, United States Supreme Court cases interpreting federal rule on which Oregon based its rule).

A related statute and the session laws combine to provide relevant context. ORS 1.735(1) directs the Council on Court Procedures to promulgate rules of civil procedure. It then provides that those rules "shall be submitted to the Legislative Assembly at the beginning of each regular legislative session" and "shall go into effect on January 1 following the close of that session" unless the legislature, "by statute, amend[s], repeal[s] or supplement[s]" them. ORS 1.735(1). In this instance, the session laws reveal that the 1979 Legislative Assembly enacted a statute to amend ORCP 36. *See* Or Laws 1979, ch 284, § 23 (amending ORCP 36 by deleting ORCP 36 B(4)).[9] Specifically, the legislature passed a statute

---

[9] Section 6 of the act notes that, in amending the Oregon Rules of Civil Procedure, "matter in italic and bracketed i[s] existing matter to be deleted." Or Laws 1979, ch 284, § 6. Section 23 of the act then sets out ORCP 36 B(4) in italics and brackets. Or Laws 1979, ch 284, § 23.

deleting ORCP 36 B(4). *Id.* Had the legislature not acted, ORCP 36 B(4) would have gone into effect and would have required a party to disclose, upon request, "the name and address of any person [that the] party reasonably expects to call as an expert witness at trial and the subject matter upon which the expert is expected to testify." *Id.* At a minimum, this legislative action undercuts the suggestion that the phrase "any matter" in ORCP 36 B(1) necessarily includes expert witnesses. *See State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 179, 818 P2d 1270 (1992) (explaining that legislature's decision to amend proposed evidence rule by deleting "drug addiction" from "mental or emotional condition" differs from situation in which legislature fails to adopt proposed amendment).[10]

Another contextual clue points in the same direction. ORCP 36 essentially tracks FRCP 26(b), with one major exception. *Compare* ORCP 36 *with* FRCP 26(b); *see* Fredric R. Merrill, *Oregon Rules of Civil Procedure 1992 Handbook* 97 (staff comment) (explaining that council generally modeled ORCP 36 on FRCP 26(b)). FRCP 26(b)(1) defines the "scope of discovery" in much the same terms as ORCP 36 B(1).[11] FRCP 26(b)(4) then specifically authorizes expert discovery. Although ORCP 36 and FRCP 26(b) contain similar definitions of the scope of discovery, ORCP 36 omits the specific authorization for expert discovery that FRCP 26(b) includes. The presence of a specific provision authorizing expert discovery in FRCP 26 and the omission of a similar provision in ORCP 36 suggest that Oregon intended to depart from the federal model and not authorize expert discovery.

---

[10] Ordinarily, the legislature's failure to enact legislation does not provide persuasive evidence of its intent. *See Red Lion Broadcasting Co. v. FCC*, 395 US 367, 381-82 n 11, 89 S Ct 1794, 23 L Ed 2d 371 (1969) (observing that "unsuccessful attempts at legislation are not the best guides to legislative intent"); *Berry v. Branner*, 245 Or 307, 311, 421 P2d 996 (1966) (same). This is not a case, however, in which the legislature failed to act. Rather, it is a case in which the legislature passed a law deleting a subsection of ORCP 36 that, had the legislature not acted, would have gone into effect. The legislature's action and the reasons for it thus provide valuable evidence of the legislature's intent. *See Ashley*, 312 Or at 179 (recognizing principle).

[11] FRCP 26(b)(1) provides that the "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

Although it appears that the legislature deleted ORCP 36 B(4) because it disagreed with the Council on Court Procedures's decision to authorize expert discovery, another inference is possible. The legislature could have concluded that specific authorization for expert discovery was unnecessary in light of ORCP 36 B(1), which provides for discovery of any relevant matter that is not privileged. The latter inference is a weak one, however. We assume that, if the legislature had intended to depart from Oregon's longstanding practice of not allowing expert discovery, it would have said so specifically. We cannot, however, discount the latter inference completely and look to the legislative history to determine the legislature's intent. *See PGE*, 317 Or at 611-12 (explaining when courts may look to legislative history).[12]

As noted, the Council on Court Procedures promulgated a rule authorizing expert discovery. Council on Court Procedures, Proposed Rules of Civil Procedure 94 (Nov 24, 1978). Fredric Merrill, the council's executive director, had explained to the council that initially the federal rules lacked a section that specifically addressed expert discovery. Fredric Merrill, Memorandum on the Discovery of Experts 1-3, Council on Court Procedures (1978).[13] The resulting federal decisions on that issued had been varied, if not inconsistent, and the federal government had resolved that inconsistency by adding FRCP 26(b)(4). *Id.* After considerable debate, a divided council agreed to adopt a variation of FRCP 26(b)(4). Minutes, Council on Court Procedures (Apr 1, 1978). ORCP 36 B(4), as finally promulgated by the council, required the parties, upon request, to disclose their experts' names and addresses and the subject matter upon which the parties

---

[12] Because we conclude that the text and context of ORCP 36 are sufficiently ambiguous to look to the legislative history, we need not decide whether the 2001 amendments to ORS 174.020 apply to this mandamus proceeding. *See* Or Laws 2001, ch 438, § 1 (directing court to "give the weight to the legislative history that the court considers to be appropriate"). Those amendments apply only to "actions commenced on or after" the act's effective date. Or Laws 2001, ch 437, § 2. More specifically, we need not decide whether the term "action" refers in this case to the underlying post-conviction action, which began before the act's effective date, or the mandamus proceeding, which began after it.

[13] The memorandum is not dated. It appears, however, to have been submitted to the council sometime after February 18, 1978. *See* Minutes, Council on Court Procedures (Feb 18, 1978) (deferring motion to reject proposed rule permitting expert discovery until Merrill had had a chance to research issue).

expected their experts to testify. Council on Court Procedures, Proposed Rules of Civil Procedure 94 (Nov 24, 1978).

Consistently with ORS 1.735(1), the council submitted that and other procedural rules to the legislature. Or Laws 1979, ch 284. Before the legislature, Frank Pozzi appeared on behalf of the council members who had opposed permitting expert discovery. Minutes, Joint House-Senate Committee on the Judiciary, HB 3131, Feb 6, 1979, 7. He focused on the increased costs that expert discovery brings and on the peer pressure against testifying that can occur when a party discloses his or her expert's name. *Id.* at 9; Minutes, Joint House-Senate Committee on the Judiciary, HB 3131, Apr 5, 1979, 10. Pozzi reasoned that the current system, which he described as not permitting expert discovery, was an efficient and fair way to try civil cases. *Id.* Garr King testified on behalf of the committee members who had supported expert discovery; he maintained that disclosure allows the parties to prepare their cases more thoroughly. Minutes, Joint House-Senate Committee on the Judiciary, HB 3131, Mar 8, 1979, 1. After both sides explored that debate over several hearings, a majority of the joint committee found the opponents' arguments persuasive and voted to delete the section authorizing expert discovery. Minutes, Joint House-Senate Committee on the Judiciary, HB 3131, Apr 5, 1979, 11.

Consistently with ORS 1.735(1), the bill, as it came out of the joint committee, affirmatively deleted ORCP 36 B(4), and a majority in both houses voted in favor of the bill. Or Laws 1979, ch 284, § 23. The debates surrounding the bill reveal that the legislature neither understood nor intended that ORCP 36 B(1) would authorize discovery of nonprivileged expert testimony. Rather, in deleting ORCP 36 B(4), the legislature made a policy choice to continue the practice of not authorizing expert discovery in civil actions in state courts.

■ Having considered the text, context, and legislative history of ORCP 36, we agree with petitioner that the legislature did not intend to authorize pretrial disclosure of either an expert's name or the substance of the expert's testimony. Without a specific provision authorizing expert discovery, the

trial court lacked authority to require the parties to disclose that information in advance of trial. *State ex rel Union Pacific Railroad v. Crookham*, 295 Or at 68-69. A peremptory writ shall issue directing the trial court to correct that aspect of the second amended trial management order.

Peremptory writ to issue.