Argued and submitted March 7, 2014, affirmed July 8, petition for review denied December 10, 2015 (358 Or 449)

CAMERINO GONZALEZ SANCHEZ,
aka Camerino Sanchez-Gonzalez,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Washington County Circuit Court
C106640CV; A150573

355 P3d 172

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Pamela J. Walsh, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Petitioner appeals a judgment denying his petition for post-conviction relief. Prior to his post-conviction hearing, the trial court issued trial management orders stating that petitioner's case would be scheduled for 15 minutes and that "[n]o live testimony will be permitted without prior court order." The court clarified that, "[i]n order to present live witnesses, a party must first file a motion to do so along with a supporting affidavit as to why live testimony is necessary." The court denied petitioner's motion requesting additional time and to call two witnesses. Later, the court denied petitioner's motion for reconsideration on the basis that petitioner had failed to establish that he could not present those witnesses' proposed testimony through deposition or affidavit. In other words, the court determined that the substance of the witnesses' testimony was such that it was not necessary for them to testify at the hearing because the same information could be relayed through an affidavit or deposition. As a result of that ruling, petitioner was not allowed to call those witnesses at his hearing. Instead, he submitted those witnesses' testimony through declarations. The trial court ultimately denied petitioner's petition in its entirety.

In a single assignment of error, petitioner "assigns error to the trial court's orders limiting the amount of time he would have to present his case, imposing preconditions on calling live witnesses, and transforming his post-conviction hearing into a summary judgment hearing." He argues that "the Oregon State Bar's Principles and Standards for Post-Conviction Relief Practitioners, statutes, rules of court, and constitutional provisions required the court to allow him a full and fair hearing on his claims, which includes allowing adequate time and to call live witnesses without having to meet the show-cause requirement the court imposed." He further argues that "the litigation restrictions the post-conviction court imposed effectively transformed petitioner's post-conviction hearing into a summary judgment proceeding," and that that "unauthorized * * * transformation established that[,] given the state of the record, the court improperly relied on documentary evidence to grant 'summary judgment' for defendant." We reject without discussion

petitioner's argument that the court transformed his hearing into a summary judgment proceeding. We limit our consideration to whether the court erred by limiting petitioner's time for his hearing and imposing a show-cause precondition on his ability to call live witnesses. For the reasons stated below, we conclude that, under the circumstances of this case, any error in imposing those limitations was harmless. Accordingly, we affirm.

## I. STANDARD OF REVIEW

We review a trial court's regulation of the proceedings before it and its control over the presentation of evidence for abuse of discretion. *See Biegler v. Kirby,* 281 Or 423, 427, 574 P2d 1127 (1978) ("The conduct of trial is within the discretion of the trial court and an appellate court will not interfere absent an abuse of discretion."). As the Supreme Court has explained, "[a] trial court's authority to exercise reasonable discretion to ensure that the trial is orderly and expeditious does not evaporate when the parties assert their constitutional rights during trial." *State v. Rogers,* 330 Or 282, 301, 4 P3d 1261 (2000) (citing *State v. Langley,* 314 Or 247, 257-60, 839 P2d 692 (1992), *adh'd to on recons,* 318 Or 28, 861 P2d 1012 (1993) (rulings that implicated defendant's rights to counsel and to fair trial reviewed for abuse of discretion), and *State v. Engeman,* 245 Or 209, 211, 420 P2d 389 (1966) (ruling that implicated defendant's right to fair trial reviewed for abuse of discretion)). "Rather, a trial court is obliged to accommodate the exercise of all pertinent constitutional and statutory rights by all parties within the context of an orderly and expeditious trial." *Id.* Thus, we review whether the trial court abused its discretion when it limited the time for the hearing and required petitioner to establish prior to trial the necessity of calling his witnesses.

## II. FACTS

Petitioner was convicted of unlawful possession of cocaine, driving under the influence of intoxicants, and reckless driving, arising out of an incident in which he drove his car into a ditch. After petitioner had driven his car into the ditch, the police arrived. The car was partially in the ditch and partially in the roadway. As a result, the police

determined that the car needed to be towed. Before towing the car, police conducted an inventory search and discovered drugs. The police gave petitioner *Miranda* warnings in English, and petitioner proceeded to make incriminating statements. At his criminal trial, petitioner's trial counsel unsuccessfully moved to suppress evidence seized during the inventory search and petitioner's incriminating post-*Miranda* statements. We summarily affirmed petitioner's direct appeal.

Petitioner thereafter initiated this post-conviction action, claiming, among other things, that his trial counsel had provided him with constitutionally inadequate representation. As relevant here, petitioner argued that his trial counsel had been constitutionally inadequate because, in seeking to suppress that evidence, (1) he had failed to argue that the inventory search of petitioner's car was invalid on the basis that the car was not a hazard and, therefore, did not need to be towed, and (2) he had failed to have petitioner—whose primary language is Spanish—tested for English proficiency to demonstrate that petitioner could not understand the *Miranda* warnings that the police gave him.[1]

After petitioner had filed his petition, before trial, the court sent the parties a letter addressing some case management issues. The letter stated, in relevant part:

"We are making an effort to resolve all post conviction relief and habeas corpus cases within one year from the original filing. If a trial date is set, the trial will be scheduled for 15 minutes. No live testimony will be permitted without prior court order. Petitioner (if in custody) will appear by telephone absent a court order to the contrary. * * *"[2]

_____

[1] Petitioner also claimed that his trial counsel was constitutionally inadequate because he had (1) stipulated to the admission of a criminalist's report without obtaining petitioner's consent; (2) failed to advise petitioner of the possibility of negotiating a plea agreement that would avoid immigration consequences; (3) permitted petitioner to be tried in shackles without requiring the state to prove that shackles were necessary; and (4) failed to object to a jury instruction authorizing a nonunanimous guilty verdict. Petitioner does not renew those contentions on appeal.

[2] It is not clear from the record whether the procedure announced in the letter was specific to that courtroom, or was a policy of Washington County Circuit Court. At the time, however, Washington County did not have a supplemental local rule reflecting that policy.

Petitioner's counsel sent the court a letter stating that he intended to call "as many as three live witnesses"—petitioner, Matt Roloff, and Professor Mariana Valenzuela—and that he estimated that he would need 90 minutes to present the case. In response, the court sent the parties a follow-up letter describing the procedure that they would have to follow to obtain live testimony at the hearing. That letter provided, in relevant part:

"In order to present live witnesses, a party must first file a motion to do so along with a supporting affidavit as to why live testimony is necessary. I strongly encourage you to present evidence by way of affidavits and depositions. It is very unlikely that I will allow live testimony in the absence of attempts to present the evidence by other means and a showing that those other means have proven unsuccessful."

Petitioner thereafter filed a motion seeking, among other things, an order allowing petitioner to call Roloff and Valenzuela as live witnesses and 90 minutes for the hearing. The motion clarified that petitioner no longer needed to testify at the hearing. In the supporting declaration filed with the motion, petitioner's counsel stated that, in their opinion, they needed Roloff and Valenzuela to testify at the hearing because their live testimony would "greatly assist[]" the court, as finder of fact, in understanding certain factual aspects of petitioner's claims because aspects of that evidence "will not be as readily understandable without a live witness," and that it is "related much more easily through live testimony."

Roloff was petitioner's employer at the time of the incident. Petitioner had called Roloff for assistance after crashing into the ditch; Roloff arrived at the scene after the police, but observed the position of the car before it was towed. In his petition, petitioner argued that his trial counsel was ineffective in failing to argue that the evidence obtained by the police should be suppressed because it was obtained through an invalid inventory search. Petitioner contended that his trial counsel should have argued that petitioner's car was not a hazard and did not need to be towed, therefore, no inventory search needed to be performed. In the supporting declaration filed with the motion for live testimony, petitioner's counsel stated that, "[i]n order to prove that the

search was unlawful, petitioner must prove that the car he was driving on the night of his arrest was not stopped in a position that required it to be towed[,]" and that Roloff "can testify about the location of the vehicle and the availability of another driver to take control of the vehicle," which are facts relevant to that issue. Petitioner's counsel also stated that, in his opinion, "the location of the vehicle at the scene will not be as readily understandable without a live witness being called."

Valenzuela is a language expert who tested petitioner's English language skills. Petitioner claimed that his trial counsel was ineffective because he had failed to have petitioner tested for English proficiency and that, had he done so, he could have obtained suppression of petitioner's incriminating statements. In the declaration supporting the motion for live testimony, petitioner's counsel stated that Valenzuela tested petitioner's language skills and that her testimony "will reveal that petitioner's poor language skills impeded his ability to understand his right to remain silent," and that the "limitations on the petitioner's ability to understand English are related much more easily through live testimony than through a summation of his testing results on paper."

The court denied petitioner's motion to call live witnesses without elaboration. The order noted that the court was granting petitioner's motion for a continuance, but that the court was denying his request to call live witnesses. The order did not state a ruling on petitioner's request for additional time, though petitioner took the denial of his request to call live witnesses as an implicit denial of his request for additional time.

Petitioner subsequently filed a motion for reconsideration of that order, explaining in legal terms why he believed that the court must allow him additional time to present his case and to call live witnesses. Specifically, petitioner argued that the court's order "would deny [him] post-conviction counsel in accordance with the Oregon State Bar's Principles and Standards for Post-Conviction Relief Practitioners." Under those standards, he explained, "to protect the petitioner's right to a full and fair hearing on the

claims asserted in the petition," post-conviction attorneys are supposed to present oral testimony at the hearing and object to any time limitations on the presentation of evidence.[3] (Quoting Standard 6.6.4.) Thus, in his view, the court's order would deprive him of his right to a full and fair hearing on the claims asserted in his petition. He also argued that the Supreme Court's opinion in *Stevens v. Czerniak,* 336 Or 392, 84 P3d 140 (2004), confirmed that claim. Additionally, petitioner argued, again relying on *Stevens,* 336 Or at 398, that the court's denial of his request for his witnesses would deprive him of a "full and fair opportunity to present [his] evidence," in violation of his due process rights. Finally, he argued that "nothing authorizes the Court to bar petitioner from calling live witnesses and denying him adequate time to present his case."

Defendant filed a response to petitioner's motion for reconsideration, arguing that ORS 138.620(2)[4] provides that a post-conviction court "may receive proof by affidavits, depositions, oral testimony or other competent evidence," and that the "manner in which evidence is presented is left to the court's discretion[.]" Defendant argued that the bar principles and standards cited by petitioner mirror ORS 138.620(2) and, similarly to that statute, those principles "do[] not suggest that oral testimony is the sole or preferred method to afford a fair hearing; rather, [oral testimony] is listed equally with the other means of testimony suggested

---

[3] For example, petitioner cited Standard 6.6.4 b-c in support of his argument. Those standards provide, in relevant part:

"b. Counsel should seek to present all evidence on behalf of the petitioner in the manner most likely to protect the petitioner's right to a full and fair hearing on the claims asserted in the petition, including oral testimony by witnesses present in a courtroom, depositions, affidavits, or other competent evidence.

"c. Counsel should object to time limitations or other constraints on the presentation of evidence, on behalf of the petitioner, that might interfere with a full and fair hearing."

Oregon State Bar Principles and Standards for Post-Conviction Relief Practitioners, http://www.osbar.org/_docs/resources/ConvictionReliefProceedings/CSPCRP3.pdf (last accessed June 30, 2015).

[4] As relevant here, ORS 138.620(2) provides:

"If the petition states a ground for relief, the court shall decide the issues raised and may receive proof by affidavits, depositions, oral testimony or other competent evidence."

by this Court," and that petitioner had "not indicated why he is unable to produce evidence by way of affidavit or deposition."

Petitioner filed a reply to defendant's response conceding that he could "'produce evidence by way of affidavit or deposition,'" but that "is beside the point," because "he cannot have a 'full and fair opportunity to present [his] evidence,' [*Stevens*, 336 Or at 398], and comply with Standard 6.6.4.b-c of the Oregon State Bar's Standards for Post-Conviction Relief Practitioners, unless he is allowed additional time and live-witness testimony."

The trial court denied petitioner's motion for reconsideration in a written decision. In that decision, the court stated:

> "Petitioner cites *Stevens v. Czerniak*, 336 Or 392[, 84 P3d 140] (2004). My prior decisions are consistent with the procedure approved of in that case in that I have not precluded either party from calling live witnesses. However, I have required a party desiring to call live witnesses to make a showing as to why it is necessary to do so in order to have a fair trial. [Petitioner's counsel's] declaration does not make that showing.
>
> "The declaration addresses two sources and types of evidence: Matt Roloff regarding vehicle location and availability of another driver and Mariana Valenzuela regarding petitioner's limited ability to understand English and the impact thereof on petitioner's ability to understand his right to remain silent."

The court explained that Roloff's proposed testimony "appears to be straightforward" and involves factual issues that could be resolved through an affidavit.[5] The court said, however, that, "[c]ertainly, if [petitioner's counsel] attempts to present Mr. Roloff's evidence by affidavit or deposition but is unable to do so and then explains to the court how and why the effort

---

[5] For example, the court explained, with respect to Roloff's proposed testimony:

"The car was in the ditch and/or protruding onto the highway a certain distance at a certain angle or it was not. There was another driver available or there was not. If there are photographs of the scene, Mr. Roloff can refer to them as easily in an affidavit or a deposition as he can from a witness stand. The photographs may be entered into evidence."

has been unsuccessful, I will reconsider [petitioner's counsel's] request to present Mr. Roloff as a live witness."

The court then addressed the subject of Valenzuela's proposed testimony, acknowledging that her "contributions may be more subtle and nuanced than Mr. Roloff's," explaining that, sometimes live testimony regarding an expert's report "has helped me understand what such a witness has to say when the report of such a witness has left me uncertain," but that, "in the vast majority of cases, nothing in the testimony of the witness adds to the witness's report." Accordingly, the court explained, petitioner's counsel would have to "produce some basis for believing that [Valenzuela's] live testimony will provide insight beyond what her report (or deposition) would provide." The court's written order denying petitioner's motion for reconsideration stated that the motion was denied "with leave to renew based on additional facts."

Petitioner did not renew his motion to call live witnesses. He did, however, renew his objection to the court's procedure in his trial memorandum. Petitioner again argued that *Stevens* "makes clear" that the Post-Conviction Hearing Act requires that petitioner be allowed a full and fair hearing on his claims. Further, because a full and fair hearing requires that petitioner "be allowed adequate time and the ability to call live witnesses," the "procedure the Court has imposed is not authorized by and in fact is antithetical to statutory and constitutional requirements." He also raised new arguments that the trial court's procedure modified the Post-Conviction Hearing Act in violation of the separation of powers doctrine in Article III, section 1, of the Oregon Constitution, as well as his rights under the Equal Privileges and Immunities Clause of Article I, section 20, of the Oregon Constitution, and the Equal Protection Clause of the federal constitution.[6]

At the post-conviction hearing, petitioner offered into evidence, *inter alia*, photographs of the ditch (not taken

---

[6] Petitioner also argued that, in denying his request for live testimony, the court was effectively transforming his post-conviction trial into a summary-judgment-type proceeding, which required the court to accept the credibility of his affiants.

on the night of the incident), and declarations from Roloff and Valenzuela, as well as a declaration and affidavit from petitioner. For its part, the state offered into evidence a number of exhibits, including an affidavit by petitioner's trial counsel[7] and photographs of the car in the ditch from the night of the incident. Petitioner did not object to the admission of trial counsel's affidavit. Nor did he tell the court that he needed to testify at the hearing in light of that affidavit.

After admitting that evidence, the court heard the parties' arguments. Petitioner brought the court's attention to the fact that he had again raised the issue of live testimony in his trial memorandum. Petitioner told the court that, given the nature of the testimony being offered, "it will be much more easily explained with live testimony to the Court[,]" and that, "although we tried our best with the declarations and pictures that we've submitted as part of the exhibits, we don't think it's as good as live testimony would have been." The court explained that petitioner had not renewed his motion for live testimony after the court had denied reconsideration, and that "[t]oday's too late[.]" At the end of the hearing, the court took the matter under advisement.

Later, the court issued a letter opinion denying all of petitioner's claims for post-conviction relief. The court's opinion addressed the Roloff and Valenzuela evidence in its assessment of petitioner's claims regarding the inventory search and the post-*Miranda* statements. With respect to petitioner's claim of ineffective assistance of counsel relating to the inventory search, the court explained:

---

[7] Petitioner argues that he did not know that his trial counsel would be giving evidence until the day of the hearing and that his trial counsel's affidavit created credibility issues with petitioner's affidavit. Petitioner contends on appeal that, given those credibility issues, the trial court could not "determine who was credible" using the "summary judgment proceeding" that the court "improperly forced upon petitioner," and, therefore, could not "reject any of petitioner's claims that involved 'swearing contests.'" In support of that argument, petitioner relies on cases involving motions for summary judgment. As noted above, we reject petitioner's argument that the court transformed his hearing into a summary judgment proceeding. As a result, we reject his argument that the court could not have decided certain of his claims absent his live testimony. We also note that petitioner never clearly presented the trial court with a request to testify at the hearing after he told the court that he no longer needed to testify. Therefore, to the extent petitioner argues on appeal that the court erred in preventing him from testifying, we conclude that that argument is not preserved.

"[P]etitioner argues that there was no reason to tow the vehicle and therefore no reason to conduct an inventory search before towing. However, the car was clearly sticking out into the roadway. (Ex 116) It was a hazard. Petitioner argues that Mr. Roloff and his son could have towed the car. However, the Roloffs never made their presence known to the police. Mr. Roloff admitted this at trial. (Ex 117, Trial Tr at 308) Accordingly, even if the Roloffs could have towed the vehicle, the deputies did not know this. The decision to tow the vehicle was reasonable and necessary due to the hazard the car represented (even Mr. Roloff admitted that the area was hazardous—Ex 12) and the inventory search before the tow was conducted according to properly enacted county ordinances. Accordingly, evidence of the cocaine found in the car was properly admitted evidence. [Petitioner's trial counsel] was in no way inadequate in failing to have evidence of the search suppressed."[8]

(Footnote omitted.) The court then addressed petitioner's claim that his trial counsel had failed to secure suppression of his post-*Miranda* statements. The court concluded that, even if petitioner's trial counsel had been at fault for not offering evidence of petitioner's inadequate understanding of his *Miranda* rights, that failure did not tend to affect the result at trial because evidence of guilt, even in the absence of his incriminating statements, was overwhelming. The court also noted that it believed that Valenzuela's assessment of petitioner's ability to understand *Miranda* rights was correct, but that, in any case, his statements were voluntary.

The court also addressed the issue of live witness testimony in a section of its opinion:

"Lastly, I shall address petitioner's renewed claim that he should have been allowed to present live testimony.

"Petitioner claims that he was denied the opportunity to do so. In fact, my order of June 28, 2011 denied the motion to reconsider the request for live testimony 'with leave to

---

[8] The court went on to say that, in any case, it was "not persuaded that admission of the evidence concerning the cocaine in the car had a tendency to affect the result of the trial," because "cocaine was also found in a baggie that a deputy observed fall out of the petitioner's pocket, when petitioner was not in the car." Thus, the court noted "the pocket baggie was sufficient for a conviction even if the baggie in the car had never been discovered." Petitioner does not challenge that conclusion on appeal.

renew based on additional evidence.' My opinion letter of that date also notes that [petitioner's attorney] 'will have to show more than he has to justify' presenting live testimony.

"Petitioner sought to present the live testimony of only two witnesses, Mr. Roloff and Ms. Valenzuela.

"According to [petitioner's attorney's] declaration, the purpose of Mr. Roloff's testimony was to show the location of the vehicle and that another person was available to take control of the vehicle. The former point appears to have been abandoned. Mr. Roloff's declaration does not dispute that the vehicle was a hazard. Indeed, the evidence shows that the vehicle was clearly protruding onto the lane of travel. Whether another person was available to take control of the vehicle is insignificant because this fact was never communicated to the deputies.

"Ms. Valenzuela's declaration is undated. Certainly, [petitioner's attorney] made no effort to convince the court that he found the declaration to be inadequate. There is no evidence that he attempted to take her testimony by deposition. Also, I have found Ms. Valenzuela to be credible, even without her live testimony. The declaration of Mr. Roloff (Ex 12) is also undated. There is no evidence that he was deposed. There was no argument after [the court denied petitioner's motion for reconsideration with leave to renew] that either declaration was inadequate or that depositions were inadequate.

"Petitioner did not seek to testify as a live witness.

"Accordingly, it is clear that the court did not deny petitioner the right to present live testimony. The court specifically gave petitioner the opportunity to renew his request if he could show that other methods of presenting his case were somehow inadequate. Petitioner failed to even attempt to do so."

The court thereafter entered a judgment reflecting its rulings. Petitioner appeals.

## III.  DISCUSSION

As noted above, petitioner "assigns error to the trial court's orders limiting the amount of time he would have to present his case, imposing preconditions on calling live witnesses, and transforming his post-conviction

hearing into a summary judgment hearing." He argues that "the Oregon State Bar's Principles and Standards for Post-Conviction Relief Practitioners, statutes, rules of court, and constitutional provisions required the court to allow him a full and fair hearing on his claims, which includes allowing adequate time and to call live witnesses without having to meet the show-cause requirement the court imposed." Specifically, he contends that there was no statute or rule authorizing the court to require a party to prove the worthiness of its live witnesses pretrial. He also contends that the court's orders deprived him of his right to a full and fair hearing on his claims, as required by the Bar Principles and Standards, as well as the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He further argues that the orders modified the Post-Conviction Hearing Act in violation of the doctrine of separation of powers in Article III, section 1, of the Oregon Constitution, and violated his rights under the Equal Privileges and Immunities Clause of Article I, section 20, of the Oregon Constitution.[9]

"It is well established that a trial court generally possesses broad discretion to control the proceedings before it." *Rogers*, 330 Or at 300 (citing, as examples of that authority, ORS 1.010 (every court has power to regulate proceedings before it and to control, in furtherance of justice, conduct of persons connected with judicial proceedings) and OEC 611(1) (court shall exercise reasonable control over presentation of evidence)). And, as noted above, "[a] trial court's authority to exercise reasonable discretion to ensure that the trial is orderly and expeditious does not evaporate when the parties assert their constitutional rights during trial." *Id.* at 301.

The issue presented, then, is whether, under the circumstances, the court's procedural restrictions violated petitioner's statutory and constitutional rights and, therefore, constitute an abuse of discretion. We note that, although

---

[9] Petitioner does not renew his argument under the Equal Protection Clause of the federal constitution. Petitioner also raises, for the first time on appeal, an argument that the trial court's orders limiting the time of the hearing and his ability to call live witnesses violated UTCR 1.040 and UTCR 1.050, as well as ORS 3.220(1). Because those arguments are not preserved, we do not reach them.

petitioner assigns error to the portion of the court's procedure limiting the time for his hearing, he appears to acknowledge that that limitation is tied to the limitation on live testimony. In other words, petitioner appears to acknowledge that the court would have allowed additional time had it granted his motion to call his witnesses. Thus, the issue in this case reduces to whether the court's requirement that petitioner establish pretrial that it was necessary to call his proposed witnesses violated his rights.

Assuming, without deciding, that the court could not impose such a requirement, we conclude that, under the circumstances of this case, petitioner was not prejudiced by that error. Accordingly, we affirm the judgment.

Petitioner did not address in his brief whether the court's asserted error in this case was harmless. However, at oral argument, when asked what prejudice petitioner suffered by the asserted error in this case, petitioner contended that trial court's error was akin to "structural error" because there was no way of telling how Roloff's and Valenzuela's live testimony would have affected the trial court's decision. Petitioner thus suggested that no finding of prejudice is required to reverse the trial court's judgment in this case because the court's error was "structural." As we explain below, petitioner's contention is incorrect for two reasons.

First, Oregon law does not recognize the concept of "structural error." *Ryan v. Palmateer*, 338 Or 278, 295, 108 P3d 1127, *cert den*, 546 US 874 (2005). Rather, under Oregon law, "[w]e may not reverse a judgment if the error was harmless." *Tracy v. Nooth*, 252 Or App 163, 170, 285 P3d 745 (2012), *adh'd to on recons*, 255 Or App 435, 299 P3d 565, *rev den*, 353 Or 868 (2013) (citing Or Const, Art VII (Amended), § 3). "An error is harmless if there is 'little likelihood that the particular error affected the verdict.'" *Id.* (quoting *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)). Thus, in a post-conviction case, "we may not reverse the post-conviction court's error [under Oregon law] if it was unlikely to have affected the outcome of petitioner's post-conviction case." *Id.* As a result, in this case, we must review any errors that the trial court committed under Oregon law for harmless error.

Second, to the extent petitioner argues that the asserted federal due process violation in this case was a "structural error," thus obviating any need for a showing of harm, we disagree. "A 'structural' error * * * is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Johnson v. United States*, 520 US 461, 468, 117 S Ct 1544, 137 L Ed 2d 718 (1997) (quoting *Arizona v. Fulminante*, 499 US 279, 310, 111 S Ct 1246, 113 L Ed 2d 302 (1991)); *see also Fulminante*, 499 US at 307-10 (explaining that structural errors are "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," in contrast to "trial errors," which are errors that occur during the presentation of the case to the factfinder and which "may therefore be quantitatively assessed in the context of other evidence presented" to determine if the error was harmless).

As an initial matter, post-conviction actions in Oregon are civil proceedings, except as specified by statute. *Elkins v. Thompson*, 174 Or App 307, 314, 25 P3d 376, *rev den*, 332 Or 558 (2001). The United States Supreme Court has "never held that an error in the *civil* context is structural." *Al Haramain Islamic Fdn. v. U.S. Dept. of Treasury*, 686 F3d 965, 988 (9th Cir 2012) (emphasis in original). And, as explained in *Johnson*, even in the criminal context, the Court has found structural errors only in a very limited class of cases:

> "See *Gideon v. Wainwright*, 372 US 335[, 83 S Ct 792, 9 L Ed 2d 799] (1963) (a total deprivation of the right to counsel); *Tumey v. Ohio*, 273 US 510[, 47 S Ct 437, 71 L Ed 749] (1927) (lack of an impartial trial judge); *Vasquez v. Hillery*, 474 US 254[, 106 S Ct 617, 88 L Ed 2d 598] (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle v. Wiggins*, 465 US 168[, 104 S Ct 944, 79 L Ed 2d 122] (1984) (the right to self-representation at trial); *Waller v. Georgia*, 467 US 39[, 104 S Ct 2210, 81 L Ed 2d 31] (1984) (the right to a public trial); *Sullivan v. Louisiana*, 508 US 275[, 113 S Ct 2078, 124 L Ed 2d 182] (1993) (erroneous reasonable-doubt instruction to jury)."

*Johnson*, 520 US at 468-69. *Cf. Hedgpeth v. Pulido*, 555 US 57, 129 S Ct 530, 172 L Ed 2d 388 (2008) (instructing jury

on multiple theories of guilt, one of which is invalid, is not a structural error requiring reversal without regard to prejudice); *Neder v. United States*, 527 US 1, 119 S Ct 1827, 144 L Ed 2d 35 (1999) (omission of an element of offense was not structural error).

Assuming, without deciding, that the concept of structural error applies in state post-conviction cases, we conclude that the assumed error in this case was not structural because it did not affect the entire conduct of the hearing; rather, it was a trial error affecting the presentation of evidence from two witnesses. Therefore, we review the assumed error under both state and federal law for harmlessness[10] and conclude that, under the circumstances of this case, any error was harmless.

The assumed error in this case prevented petitioner from calling Roloff and Valenzuela to testify at trial. However, petitioner was able to present their testimony by declaration. Furthermore, the trial court credited their written testimony, but determined that that testimony did not affect its determination of the merits of petitioner's claims. Petitioner did not argue below, nor does he argue on appeal, that Roloff's and Valenzuela's testimony raised credibility issues that could be resolved only through the observation of those witnesses' live testimony. Rather, as the trial court

---

[10] In direct appeals of criminal cases, the United States Supreme Court has held that "before a federal constitutional error can be held harmless, the [reviewing] court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967). Later, the Court held that a less stringent harmlessness standard applies in determining whether habeas relief must be granted for a constitutional error that occurred during the petitioner's criminal trial. *Brecht v. Abrahamson*, 507 US 619, 113 S Ct 1710, 123 L Ed 2d 353 (1993). That harmlessness standard is whether the federal constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637 (internal quotation marks omitted). Under *Brecht*, then, it seems clear that we are not to apply the beyond a reasonable doubt harmlessness standard in a case like this, which does not involve a direct review of a criminal trial. However, it is not as clear whether the standard in *Brecht* is appropriate, or whether a lesser standard would apply given that, unlike in *Brecht*, in this case we are dealing with a constitutional error that allegedly occurred in the post-conviction proceeding itself, *not* in the underlying criminal trial. We conclude that, even assuming the standard in *Brecht* applies in this context, the error in this case did not have a "substantial and injurious effect or influence" in determining the trial court's decision on the merits of the petition.

indicated, their testimony related to factual issues that were generally straightforward. Petitioner has not provided us with any argument as to what additional testimony Roloff and Valenzuela would have given had they been allowed to testify at the hearing, or how that testimony would have changed the trial court's decision. Because petitioner was not harmed by the court's alleged error, we affirm.

Affirmed.