Argued and submitted August 17, 2018, affirmed February 10, 2021

MICHAEL MARTIN McDONNELL,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent, Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
08C24379; A158967

483 P3d 640

Petitioner filed a petition for post-conviction relief from his conviction for aggravated murder and sentence of death, in which he alleged prejudicial error before and during the 1984 adjudication-phase trial, during the various penalty-phase trials, and on appeal. Petitioner appeals a judgment rejecting the claims, raising 39 assignments of error through counsel and an additional *pro se* assignment in a supplemental brief. *Held*: Writing to address only 31 of petitioner's assignments of error, the Court of Appeals rejected all of petitioner's various contentions. The court rejected petitioner's contentions that the post-conviction court had applied an incorrect burden of proof on prejudice, that summary judgment procedure is inapplicable in the capital post-conviction cases, and that the Supreme Court's opinion in *Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994), is contrary to law and violates petitioner's constitutional right to due process. The court wrote that petitioner's claims relating to trial court error were barred by *Palmer*. The court held trial counsel were not constitutionally deficient in their representation of petitioner with regard to the second death-penalty question—"whether there is a probability that the defendant will commit continuing acts of violence that constitute a continuing threat to society"—in failing to also call a statistical expert. The court further held that petitioner had not preserved a challenge to trial counsel's failure to object to specific questions of witnesses by the jury and witnesses' responses, and that petitioner had not established prejudice with respect to any alleged ineffectiveness of counsel. The court rejected without discussion petitioner's remaining assignments and affirmed the trial court's dismissal of the petition.

Affirmed.

Mary Ann Bearden, Senior Judge.

Kenneth A. Kreuscher argued the cause for appellant. Also on the briefs were Mark A. Larranaga and Bert Dupre. Michael M. McDonnell filed the supplemental brief *pro se*.

Gregory A. Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor

General, and Jonathan N. Schildt, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Affirmed.

## ARMSTRONG, P. J.

Petitioner was convicted of aggravated murder in 1988 and sentenced to death. On automatic and direct review, *State v. McDonnell*, 313 Or 478, 837 P2d 941 (1992) (*McDonnell IV*), the Supreme Court upheld petitioner's conviction but vacated the death penalty and remanded for resentencing. After proceedings on remand, the Supreme Court considered petitioner's appeals twice more and ultimately upheld the death-penalty sentence. *State v. McDonnell*, 343 Or 557, 176 P3d 1236 (2007) (*McDonnell VI*), *cert den*, *McDonnell v. Oregon*, 55 US 904, 129 S Ct 235, 172 L Ed 2d 180 (2008). In this post-conviction proceeding, petitioner appeals a judgment denying his petition for post-conviction relief, raising 39 assignments of error through counsel and an additional *pro se* assignment in a supplemental brief. We conclude for the reasons explained in this opinion that the post-conviction court did not err in denying relief, and we therefore affirm.

On November 21, 1984, petitioner walked away from an inmate work crew at the Farm Annex of the Oregon State Prison, where he was serving concurrent sentences for property offenses. On December 22, 1984, petitioner murdered the victim, who had picked him up hitchhiking, by cutting her with a knife. The cause of the victim's death was loss of blood, primarily due to the severing of the victim's neck vessels. The physician who performed the autopsy found 40 knife wounds on the victim's body, including multiple wounds to the chin, neck, hands, chest, and abdomen. *McDonnell IV*, 313 Or at 481. Defendant was charged with the capital offense of aggravated murder under ORS 163.095(2)(f), murder committed after escape from and before return to the custody of a penal or correctional facility. *State v. McDonnell*, 84 Or App 278, 280, 733 P2d 935 (1987) (*McDonnell I*). Petitioner's defense was that he committed the murder while in a drug-induced psychosis and was unable to form the intent necessary to commit the crime of aggravated murder and that, therefore, he was guilty only of the crime of manslaughter. *Id*.

The trial court set aside the indictment, concluding that ORS 163.095(2)(f) violated Article I, sections 16 and 20,

of the Oregon Constitution, and the Eighth Amendment to
the Constitution of the United States, because it imposed an
unconstitutional sentence. We reversed that judgment and
sent the case back for trial, *McDonnell I*, and the Supreme
Court denied review.

Before trial, the state and defendant engaged in
extensive negotiation about a possible plea agreement,
which the state ultimately rejected for the reason that
the victim's parents insisted that the prosecution seek the
death penalty. Also before trial, petitioner filed a motion
under ORS 14.250 and ORS 14.260(1)[1] to disqualify Judge
Millikan from presiding. In an affidavit, petitioner declared
that he believed in good faith that Judge Millikan was prej-
udiced against his interests, because Judge Millikan had
formerly worked with the deputy district attorney prosecut-
ing petitioner's case. Petitioner also stated that he had "been
informed of other facts and circumstances which concern[ed
him] greatly," but he did not elaborate on those other facts
and circumstances. The motion and affidavit did not include
any allegation of actual bias and, in granting the motion,
Judge Seitz did not make a determination of actual bias.
The case proceeded to trial before Judge Seitz.

Petitioner's prosecution came to trial in March 1988,
shortly after the Oregon Supreme Court had issued its opin-
ion in *State v. Wagner*, 305 Or 115, 160, 752 P2d 1136 (1988)
(*Wagner I*), upholding the constitutionality of *former* ORS
163.150(1) (1984), under which the sentence for aggravated
murder was "death or life imprisonment," as determined by
the jury's answers to three questions.[2] *Wagner I* held that the
statute survived an Eighth Amendment challenge, because

---

[1] ORS 14.250 provides that a judge can be disqualified if "any party or attor-
ney believes that such party or attorney cannot have a fair and impartial trial
or hearing before such judge." ORS 14.260(1) provides that "[n]o specific grounds
for the belief need be alleged" and that "the motion shall be allowed unless the
judge moved against *** challenges the good faith of the affiant and sets forth
the basis of the challenge."

[2] Under ORS 163.150(1) (1984), the three questions were:

"Whether the conduct of the defendant that caused the death of the deceased
was committed deliberately and with the reasonable expectation that death
of the deceased or another would result";

"Whether there is a probability that the defendant would commit criminal
acts of violence that would constitute a continuing threat to society"; and

the statute did not impermissibly limit a sentencing jury's ability to consider mitigating circumstances.

Petitioner was tried and convicted of aggravated murder and sentenced to death under *former* ORS 163.150(1) (1984).[3]

After entry of judgment, on automatic and direct review, the parties agreed to limit review to the question "whether the district attorney based his decision not to enter into the plea agreement on improper considerations and, if so, determining what is the proper remedy for such an erroneous decision." *State v. McDonnell*, 310 Or 98, 101, 794 P2d 780 (1990) (*McDonnell III*).

In *McDonnell III*, on the state's concession, the court held that the district attorney had violated ORS 135.415, which describes the criteria to be considered in plea negotiations, by allowing the victim's parents to control the decision whether to accept a plea offer, and the court vacated the judgment and remanded the case for an evidentiary hearing to determine how the district attorney would have exercised his discretion under proper criteria and the facts existing at the time. The court described the potential dispositions, depending on the trial court's determination:

> "If, after hearing the evidence, the trial court finds that the district attorney would have reached the same decision to proceed with the prosecution of the accused on proper grounds, then the judgment of conviction and sentence of death shall be reinstated and an appeal therefrom may proceed. If, however, the trial court finds that the [district attorney] would have accepted the negotiated plea, then, as the State concedes, the defendant shall be permitted to enter a plea of guilty to the crime of aggravated murder and the trial court shall sentence him to life imprisonment."

*Id.* at 106-07. On remand, the trial court determined that the district attorney would have sought the death penalty regardless of the victim's parents' wishes, and the trial

---

"Whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased."

[3] The court entered an order to that effect. In *State v. McDonnell*, 306 Or 579, 761 P2d 921 (1988) (*McDonnell II*), the Supreme Court remanded the case for entry of a sentencing judgment of death.

court therefore reinstated the judgment of conviction and death sentence.

In the meantime, in *Penry v. Lynaugh*, 492 US 302, 109 S Ct 2934, 106 L E2d 256 (1989), the United States Supreme Court held that sentencing juries in capital cases must be presented with a specific instruction requiring them to consider mitigation evidence. The United States Supreme Court thus vacated and remanded *Wagner I. Wagner v. Oregon*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989).

In *State v. Wagner*, 309 Or 5, 7-8, 786 P2d 93 (1990), *cert den*, 498 US 879 (1990) (*Wagner II*), the Oregon Supreme Court held that *former* ORS 163.150(1) (1984) was not "facially unconstitutional" under *Penry*, because the statutory scheme permitted an instruction directing the jury to consider all relevant mitigation evidence. The court held that, in cases in which a capital sentencing jury had not been instructed "to consider any mitigating aspect of defendant's life *** not necessarily related causally to the offense" in determining whether the defendant should be sentenced to death, the appropriate remedy was a remand for new penalty-phase proceedings. *Id*. at 20.[4]

On automatic and direct review, in *McDonnell IV*, the Supreme Court upheld the trial court's ruling relating to plea negotiations and also upheld petitioner's conviction

---

[4] After *Penry* but before the Supreme Court decided *Wagner II*, the legislature amended ORS 163.150(1) to add a fourth question:

"If constitutionally required, considering the extent to which the defendant's character and background and the circumstances of the offense may reduce the defendant's moral culpability or blameworthiness for the crime, whether a sentence of death be imposed."

ORS 163.150(1)(b)(D) (1989). In *State v. Guzek*, 322 Or 245, 263, 906 P2d 272 (1995) (*Guzek II*), the Supreme Court concluded that the fourth question served as a mechanism that allowed juries "to give full effect to any mitigating circumstances" that weighed against a death sentence. As amended, ORS 163.150 (1989) also added a third sentencing option for aggravated murder of "true life"—life without the possibility of parole. *State v. McDonnell*, 329 Or 375, 377-78, 987 P2d 486 (1999) (*McDonnell V*). The legislature also included a provision authorizing a penalty-phase-only remand:

"If a reviewing court finds prejudicial error in the sentencing proceeding only, the court may set aside the sentence of death and remand the case to the trial court. No error in the sentencing proceeding shall result in reversal of the defendant's conviction for aggravated murder."

ORS 163.150(5)(a) (1989).

for aggravated murder. But, on the state's concession, the court held that the trial court's instructions in the penalty phase were inadequate under *Wagner II*. 313 Or at 506-07.

On remand, the trial court rejected petitioner's request to waive *ex post facto* objections and sentence petitioner under ORS 163.150(5) (1993), so that he could be considered for a true-life sentence, instead of under ORS 163.150 (1984), which was the statute in effect at the time of the crime. The jury again sentenced petitioner to death.

On petitioner's appeal from the second death-sentence judgment, the Supreme Court held that petitioner had lawfully waived an *ex post facto* objection to sentencing under ORS 163.150 (1993), and that the trial court had therefore erred in sentencing petitioner under ORS 163.150 (1984). *State v. McDonnell*, 329 Or 375, 391, 987 P2d 486 (1999) (*McDonnell V*).

On remand, the trial court, Judge Seitz, recused herself, as did another judge, and Judge Millikan agreed to retry the penalty phase. No party objected to Millikan presiding despite his having previously been disqualified. The court sentenced petitioner under ORS 163.150(5)(a) (1993), and, for a third time, the jury returned a death sentence. On automatic and direct review, the Supreme Court upheld the sentence. *McDonnell VI*. The court rejected petitioner's contention that the sentencing judgment was void as a result of Millikan having presided after being disqualified from presiding over the original trial. Rather, the court held, "Millikan's conduct in presiding over defendant's penalty-phase trial was a procedural error to which defendant was required to object in order to preserve the issue for appellate review." 343 Or at 568. The court concluded that the judgment was "voidable" rather than void, and that, because petitioner had failed to raise an objection to Millikan presiding, the issue was not preserved for appellate review. The court further declined to review the issue as plain error. *Id.* at 571.

Petitioner filed his original petition for post-conviction relief in 2009. The post-conviction court granted defendant's motion for summary judgment on some of petitioner's claims and sub-claims. The matter came to trial

in 2014, on petitioner's Fifth Amended Petition for Post-Conviction Relief, alleging prejudicial error before and during the 1984 adjudication-phase trial, during the various penalty-phase trials, and on appeal. The petition also alleged an "outrageous and prejudicial delay" in the proceedings.

The post-conviction court issued a lengthy letter opinion addressing petitioner's claims and denying relief. On appeal, petitioner raises 40 assignments of error. We review the post-conviction court's rulings for legal error. ORS 138.650(1). We are bound by the post-conviction court's findings if they are supported by any evidence in the record. *Montez v. Czerniak*, 355 Or 1, 8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistent with the post-conviction court's conclusions of law." *Id*. However, "[i]f an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the presumption does not apply." *Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015).

In his first through seventh assignments of error, petitioner contends that the post-conviction court erred in denying post-conviction relief on petitioner's claims that the trial courts that resentenced him erred, and that trial and appellate counsel were ineffective in failing to argue that, without a lawful capital punishment scheme in place at the time of his offense, petitioner could not be resentenced to death under the Supreme Court's "*Penry* fix" of *former* ORS 163.150 (1984) in *Wagner II*.

Petitioner's claims of error by the trial court are barred, because they could have been raised on direct appeal. *Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994) (interpreting ORS 138.550 to require that, absent a few "narrow exceptions," a post-conviction petitioner may not obtain post-conviction relief on a ground that he or she could reasonably have been expected to raise at trial or on direct appeal in the underlying criminal proceeding).

Petitioner's claims against counsel are disposed of by the Supreme Court's opinion, *State v. Langley*, 363 Or 482, 424 P3d 688 (2018), decided after oral argument. *Langley* holds that the court's opinion in *Wagner II*, interpreting ORS 163.150 (1984) in light of *Penry*, was proper and could be constitutionally applied retroactively. *Langley*, 363 Or at 534 (rejecting "defendant's argument that application of the fourth question in his case subjected him to a harsher penalty than he could have otherwise received when he committed his crimes by virtue of [a] purported unconstitutional capital sentencing statute").[5] We therefore reject petitioner's first through seventh assignments.

The post-conviction court granted defendant's motion for summary judgment on a number of claims, based on ORS 138.550 and the Supreme Court's opinion in *Palmer*, on the ground that those claims reasonably could have been raised in the underlying criminal proceedings. In his eighth through fifteenth assignments, petitioner contends that the post-conviction court erred, because *Palmer* is "contrary to the plain text of the statutes" and thus "violates petitioner's due process interests established by the post-conviction hearings act." That is an argument for the Supreme Court. *Clark v. Nooth*, 284 Or App 762, 769 n 4, 395 P3d 32, *rev den*, 362 Or 38 (2017).[6] We therefore reject petitioner's eighth through fifteenth assignments of error.

In his sixteenth assignment, petitioner asserts that summary judgment is not available under the Post-Conviction Hearing Act. He notes that the Act provides its own procedure for challenging claims and does not explicitly include a motion for summary judgment; instead, petitioner contends, a party seeking to avoid trial of a post-conviction

---

[5] We have considered and reject petitioner's Due Process Clause challenge to the retroactive application of *Wagner II*.

[6] Petitioner points out that one of the claims in the Fourth Specification of the Fifth Amended Petition for Post-Conviction Relief would not have been subject to *Palmer*, because it alleged a claim relating to appellate counsel's deficiency in failing to argue that the application of ORS 163.150 (1989) and later statutes violated the state and federal constitutional guarantees against *ex post facto* laws as applied to petitioner. Petitioner is correct that *Palmer* would not authorize a striking of the claim. But the claim was a duplicate of other allegations that the post-conviction court addressed on the merits, so the error in dismissing it on the basis of *Palmer* is harmless.

claim may seek to dismiss the claim as without merit under ORS 138.525 (providing for dismissal of a meritless petition).

We reject the contention. Our case law is well-settled that summary judgment is applicable in the post-conviction context. The Oregon Rules of Civil Procedure apply in post-conviction proceedings, except to the extent that a more specific statute in the Post-Conviction Hearing Act applies. *Mueller v. Benning*, 314 Or 615, 621 n 6, 841 P2d 640 (1992); *Quimby v. Hill*, 213 Or App 124, 128 n 1, 159 P3d 1264, *rev den*, 343 Or 223 (2007) ("We note as a threshold matter that, unless a different legislative intention is indicated, the Oregon Rules of Civil Procedure generally apply to post-conviction proceedings."). As we said in *Lizarraga-Regalado v. Premo*, 284 Or App 176, 182-83, 390 P3d 1079, *rev den*, 361 Or 803 (2017),

> "In post-conviction proceedings, as generally, a movant defendant is entitled to summary judgment against a claim
>
> > "'if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law.'"

(quoting ORCP 47 C); *see Eklof v. Steward*, 360 Or 717, 733, 385 P3d 1074 (2016) ("In some post-conviction cases, where the question is whether a claim reasonably could have been raised in a prior action, the issue will be a legal one, capable of resolution on summary judgment."). Although the Post-Conviction Hearing Act does not explicitly list summary judgment as a procedure available to challenge claims, the Act does not preclude it.

Citing case law relating to the right to direct appeal of a death sentence, *Woodson v. North Carolina*, 428 US 280, 303-04, 96 S Ct 2978, 49 L Ed 2d 944 (1976) ("death is a punishment different from all other sanctions in kind rather than degree"); *State v. Guzek*, 322 Or 245, 264, 906 P2d 272 (1995) (capital cases "require our most vigilant and deliberative review") (quoting *Woodson*, 428 US at 303-05), petitioner contends that summary judgment procedure should not be available in death-penalty cases, because the procedure deprives the petitioner of "full investigation and discovery," in violation of the Due Process Clause, the Equal Protection

Clause, and the Eighth Amendment. We are not persuaded. The post-conviction proceeding is not a direct appeal and does not deprive a defendant of the full panoply of rights and protections otherwise available at trial and on direct appeal, which petitioner had. Nor does the summary judgment procedure deprive a petitioner in the post-conviction context from fully investigating a case or developing the record that bears on the issues in dispute. Summary judgment is available only when the court, viewing the evidence in the record in the light most favorable to the opposing party, can determine that there are no genuine issues of material fact and the proponent of summary judgment is entitled to judgment as a matter of law. ORCP 47 C. The record here shows that petitioner had a full and fair opportunity to develop his post-conviction claims and that his opportunity to do that was not impaired by summary judgment procedure.

In his seventeenth assignment of error, petitioner contends that the post-conviction court applied an incorrect burden of proof as to prejudice. Petitioner points out that in its letter opinion the post-conviction court offered a summary of the law that applies to proof of inadequate assistance of counsel:

> "To prevail on a claim of inadequate assistance of counsel, the petitioner has the burden to prove, *by a preponderance of evidence*, that (1) counsel failed to exercise reasonable professional skill and judgment, and (2) if petitioner has proved the first burden, that the failure had a tendency to affect the result of the trial."

(Emphasis added.) In petitioner's view, the court's summary shows that the court misunderstood the standard of proof to establish prejudice in the post-conviction context under the state and federal constitutions. Petitioner cites the United States Supreme Court's opinion in *Strickland v. Washington*, 466 US 668, 693, 104 S Ct 2052, 80 L Ed 2d 674 (1984), in which the Court said that a petitioner need not establish "that counsel's deficient conduct more likely than not altered the outcome in the case." Rather, under the United States Constitution, prejudice results if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. In petitioner's view,

the post-conviction court's reference to the preponderance standard for establishing prejudice was erroneous.

We are not persuaded that the post-conviction court's statement shows that it misunderstood the law or misapplied the burden of proof. Under ORS 138.620(2), "[t]he burden of proof of facts alleged in the petition shall be upon the petitioner to establish such facts by a preponderance of the evidence." As the court held in *Gable v. State of Oregon*, 353 Or 750, 758, 305 P3d 85 (2013), that burden of proof applies to facts related to both prongs of the test for inadequacy of counsel. The post-conviction court's statement is a paraphrase of the required proof of facts to show inadequate performance and prejudice, as stated by the Supreme Court in *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991) ("The burden is on petitioner to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result."). *See also Green v. Franke*, 357 Or 301, 322-23, 323 n 13, 350 P3d 188 (2015) (describing standards for assessing prejudice).

Under the Oregon Constitution, the prejudice prong is satisfied when the facts established by a preponderance of the evidence show that the acts or omissions of counsel "had a tendency to affect the result of the trial." *Burdge v. Palmateer*, 338 Or 490, 492, 112 P3d 320 (2005) (quoting *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002)); *see also Trujillo*, 312 Or at 435 ("'only those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude'" (quoting *Krummacher v. Gierloff*, 290 Or 867, 883, 627 P2d 458 (1981) (brackets omitted))). We recently said in *Running v. Kelly*, 306 Or App 589, 601-02, 475 P3d 450 (2020), that, to show a "tendency," "'a petitioner must show more than it is possible that the outcome of the prosecution would have been different if counsel had performed reasonably, but need not show that it is more likely than not that the outcome would have changed'" (quoting *Stomps v. Persson*, 305 Or App 47, 56, 469 P3d 218 (2020)).

Under the Sixth Amendment, prejudice is shown when the facts established by a preponderance of the

evidence show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with "reasonable probability" defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. In *Gable*, the Oregon Supreme Court explained that the state and federal tests for establishing prejudice are functionally similar. 353 Or at 759 (explaining that the "reasonable probability" standard under the Sixth Amendment to the United States Constitution is similar to the legal showing that must be made under the Oregon Constitution, and differentiating that showing from the factual preponderance standard). Here, in addition to the statement that petitioner considers to be problematic, the post-conviction court cited the federal "reasonable probability" standard. There is no reason to conclude that the court applied the preponderance-of-the-evidence standard in a way that conflicts with *Strickland*, or that the court did not correctly apply a "more-than-a-mere-possibility" or "reasonable probability" standard in assessing whether the facts, established by a preponderance of the evidence, established prejudice.

Petitioner's eighteenth through twenty-second assignments of error challenge the post-conviction court's ruling granting defendant's motion for summary judgment on claims relating to the disqualification of Judge Millikan. Petitioner alleged that counsel at the 2002 penalty-phase proceeding was inadequate in failing to review the 1988 trial court file and discover that Millikan had been disqualified and was inadequate in failing to bring the disqualification to Millikan's attention. Through that inadequacy, petitioner alleged, trial counsel deprived petitioner of his constitutional right to a fair trial and due process of law. Petitioner further alleged that Millikan's own error in failing to recuse himself was inherently prejudicial and entitled petitioner to a new penalty-phase trial as a matter of law. Petitioner further alleged that appellate counsel was not prepared to argue the disqualification issue on appeal and was ineffective.

Defendant filed a motion for summary judgment on the claims relating to Millikan's disqualification, which

the post-conviction court granted, ruling that petitioner had failed to present evidence of prejudice. The court found that "petitioner failed to submit evidence raising a genuine issue of material fact demonstrating that Judge Millikan took any action motivated by actual bias during the 2002 penalty phase proceedings," and further explained that petitioner had not shown that Millikan's recusal and the appointment of a different judge at the 2002 penalty-phase proceeding would have had a tendency to affect the outcome of the penalty-phase proceeding.

Petitioner asserts on appeal that the post-conviction court erred in rejecting the contentions regarding the effect of Millikan's disqualification and the inadequacy of counsel in failing to address them, which, petitioner asserts, was inherently prejudicial. Petitioner contends that counsel's inadequacy resulted in petitioner being tried before a biased judge which, as he notes, the United States Supreme Court has described as a "structural defect in the constitution of the trial mechanism." *See Arizona v. Fulminante*, 499 US 279, 290, 111 S Ct 1246, 113 L Ed 2d 302 (1991) (being tried before a biased judge is among three constitutional errors that defies harmless error analysis).[7]

We review the post-conviction court's granting of defendant's motion for summary judgment to determine whether the post-conviction court correctly concluded that there are no genuine issues of material fact and that defendant was entitled to judgment as a matter of law. ORCP 47 C; *Putnam v. Angelozzi*, 278 Or App 384, 388, 374 P3d 994 (2016).

The post-conviction court correctly rejected the claims of error by Millikan in failing to recognize that he had been disqualified and to recuse himself, because the claims could have been raised at trial and on direct appeal and are therefore barred on post-conviction. *Palmer*, 318 Or at 357-58 (holding that, absent a few "narrowly drawn exceptions," a post-conviction petitioner may not obtain post-conviction

---

[7] Petitioner does not, however, claim to be asserting "structural" error. *See Sanchez v. State of Oregon*, 272 Or App 226, 239, 355 P3d 172, *rev den*, 358 Or 449 (2015) ("Oregon law does not recognize the concept of 'structural error.'").

relief on a ground that he or she could reasonably have been expected to raise at trial or on direct appeal).

As to the claims of alleged inadequacy of trial counsel, we agree with the post-conviction court that petitioner failed to present a genuine issue of material fact as to prejudice. The record on summary judgment shows that petitioner had new counsel during the 2002 penalty-phase proceeding who had not reviewed the 1988 trial record and was not aware of Millikan's disqualification. That evidence presents a genuine issue of material fact as to whether trial counsel was inadequate in failing to pursue a recusal of Millikan, but not as to prejudice. To present a genuine issue of material fact as to prejudice, petitioner would have had to present some evidence of actual bias or that Millikan's recusal and the appointment of a different judge to preside would have tended to affect the outcome of the penalty-phase proceeding or given rise to a reasonable probability that the outcome of the penalty-phase proceeding would have been different—that is, that petitioner would not have received a death sentence. We agree with the post-conviction court's determination that petitioner presented no evidence that raised a genuine issue of material facts on those points.

Petitioner asserts that when, as here, a judge has been statutorily disqualified, a trial by that judge is inherently unfair, or at least gives rise to a factual issue as to fairness that precludes summary judgment on post-conviction, which constitutes the showing of prejudice. We reject petitioner's contention. Petitioner does not claim to be asserting structural error, but his contention that the proceeding was inherently unfair is akin to that concept, which Oregon courts do not recognize. *Sanchez v. State of Oregon*, 272 Or App 226, 239, 355 P3d 172, *rev den*, 358 Or 449 (2015) ("Oregon law does not recognize the concept of 'structural error[,]'" and in a post-conviction case, "we may not reverse the post-conviction court's error [under Oregon law] if it was unlikely to have affected the outcome of petitioner's post-conviction case." (Citations omitted.)). Under the Oregon Constitution, to establish a right to post-conviction relief based on ineffective counsel, *actual* prejudice must be shown. *Stevens v. State of Oregon*, 322 Or 101, 110, 902 P2d 1137 (1995) (even if petitioner proves that his trial counsel

failed to exercise reasonable professional skill and judgment, he still must prove that he suffered prejudice as a result of that failure).

Even in the federal post-conviction context, the United States Supreme Court has held that, "[w]hen a structural error is raised in the context of an ineffective-assistance claim[,]" "finality concerns" require a petitioner to "show prejudice in order to obtain a new trial," unless the ineffective assistance amounts to a constructive denial of counsel. *Weaver v. Massachusetts*, 582 US ___, ___, 137 S Ct 1899, 1913, 198 L Ed 2d 420 (2017); *Ryan v. Palmateer*, 338 Or 278, 299, 108 P3d 1127 (2005) ("A [petitioner] who chooses to assert a Sixth Amendment ineffective assistance of counsel claim without proving prejudice must demonstrate that trial counsel's errors were so egregious as to amount to a constructive denial of counsel[.]"). A constructive denial of counsel means that "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing" "throughout the *** proceeding[s] as a whole." *Bell v. Cone*, 535 US 685, 696-97, 122 S Ct 1843, 152 L Ed 2d 914 (2002) (quoting *United States v. Cronic*, 466 US 648, 659, 104 S Ct 2039, 80 L Ed 657 (1984) (emphasis in the original). Petitioner has not presented evidence of actual prejudice or a constructive denial of counsel.

As to petitioner's claim relating to appellate counsel, there is no evidence in the record on summary judgment that, even if appellate counsel was deficient in failing to more effectively make unpreserved arguments concerning the legal consequence and prejudicial effect of Millikan's failure to recuse himself, the outcome on direct appeal of the 2002 penalty-phase proceeding would have been different. We conclude for the above reasons that the post-conviction court did not err in rejecting petitioner's claims relating to Millikan's failure to recuse himself during the 2002 penalty-phase proceeding.

In his twenty-third assignment of error, petitioner contends that the trial court erred in denying relief on his claim that trial counsel in the pretrial phase of the 1988 trial were inadequate and ineffective because they were unqualified to serve in a capital case and did not assemble

a qualified team—contending, essentially, that petitioner was denied counsel and that no prejudice need be shown. We agree with defendant that a general complaint regarding the competence or qualification of trial counsel cannot establish a basis for post-conviction relief in the absence of evidence of deficient performance resulting in prejudice. *See Trujillo*, 312 Or at 435 (To establish inadequate assistance of trial counsel under Article I, section 11, a petitioner must show, "by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result."); *Strickland*, 466 US at 687-88, 694 (To establish ineffective assistance of trial counsel under the Sixth Amendment, a petitioner must prove that trial counsel's performance "fell below an objective standard of reasonableness *** under prevailing professional norms" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."); *see also State v. Maletta*, 98 Or App 643, 650, 781 P2d 350 (1989), *rev den*, 309 Or 522 (1990) (The "adequacy of counsel is measured by performance, not credentials." (Citing *Krummacher*, 290 Or at 872.)).

The record shows that, in the 1988 trial, the trial court denied counsel's request for funding to hire a jury consultant, an expert in the preparation and presentation of mitigation in capital cases, a national death penalty consultant, an expert on the second jury question, and an expert on the deterrent effect of the death penalty. In his twenty-third assignment, petitioner contends that that denial of funding, combined with trial counsel's failure to ask the court to reconsider its ruling or to seek mandamus, resulted in a "complete denial of counsel," and that the post-conviction court therefore erred in rejecting his claim, "even in the absence of a record showing what 1988 trial counsel would have produced if allowed funding for adequate investigation, retention of experts, and retention of pre-trial preparation assistance."

Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." *Strickland*, 466 US at 690. The post-conviction court found that counsel's representation was not deficient and that, in any event, petitioner had not shown prejudice, because petitioner had not shown that the funding decision would have changed if counsel had "asked again with different authorities," or that if "that evidence [had] been presented *** the result may have changed." Petitioner does not offer any evidence to the contrary. For the reasons earlier expressed, we once again reject petitioner's contention that, even assuming deficient representation, no showing of prejudice was required.

In assignments twenty-four through twenty-six, petitioner contends that the post-conviction court erred in rejecting petitioner's claims that trial counsel in 1988 and 2002 were inadequate and ineffective for not litigating a motion for change of venue. ORS 131.355 provides:

> "The court, upon motion of the defendant, shall order the place of trial to be changed to another county if the court is satisfied that there exists in the county where the action is commenced so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial."

A change of venue is required only when prejudice is so great that "the defendant cannot obtain a fair and impartial trial." The standard is the same under both the state and federal constitutions. *State v. Sparks*, 336 Or 298, 305-06, 83 P3d 304 (2004) (describing standard under state and federal constitutions). Petitioner has not shown that, if trial counsel had made a motion for change of venue it would have been successful and that it would have resulted in a different sentence. For that reason, even assuming that counsel was deficient in failing to request a change in venue, we conclude that petitioner has not established prejudice as a result of counsel's deficiency

The jury in the 2002 penalty-phase proceeding was instructed that, in addressing what is commonly known as the fourth question, it should consider any aspect of petitioner's character or background or any circumstances of the murder. In petitioner's twenty-seventh assignment of error, he asserts that 2002 penalty-phase trial counsel

was inadequate in failing to argue that the fourth-question instruction was defective without an additional instruction that the reasonable-doubt standard applied to consideration of circumstances under the fourth question. Petitioner did not present argument on that claim below and it is therefore unpreserved and not reviewable.[8]

During the 2002 penalty-phase proceeding, petitioner's counsel agreed to the court allowing members of the jury to submit written questions to witnesses, to be read by the judge, as permitted by ORCP 58 B(9);[9] ORS 136.330(1) (providing that ORCP 58 B applies at criminal trials); *see State v. Stevens*, 311 Or 119, 147-48, 806 P2d 92 (1991) (ORCP 58 B(4) applies to "guilt" and penalty phases). The post-conviction court found that 2002 trial counsel's agreement to allow jurors to submit questions was strategic:

> "It is clear that [counsel] made a strategic decision that it was best to hear the jurors' concerns so that he could confront those concerns by tailoring his case to address them."

The post-conviction court additionally determined that petitioner had failed to show any prejudice or to "identify any question submitted by a juror that shows the juror asking the question would disregard his/her oath to faithfully apply the law despite any personal feelings or bias." In his twenty-eighth assignment, petitioner claims that the record does not support the post-conviction court's finding that trial counsel's decision was strategic, and further contends that there is no reasonable strategic justification to agree to allow jury questions. Defendant responds that a reasonable defense attorney could have concluded that it was better for counsel to know jurors' concerns or potential biases before they deliberated, and that it would be a reasonable strategic course to permit jury questioning.

---

[8] We note that, in *Langley*, the Supreme Court has since rejected petitioner's argument, holding that the fourth question does not carry a burden of proof. 363 Or at 535-36 (relying on *State v. Longo*, 341 Or 580, 148 P3d 892 (2006), *cert den*, 552 US 835 (2007)).

[9] ORCP 59 B(9) provides:

"With the court's consent, jurors shall be permitted to submit to the court written questions directed to witnesses or to the court. The court shall afford the parties an opportunity to object to such questions outside the presence of the jury."

Assuming, without deciding, that the record does not reflect a strategic motivation for counsel's agreement to allow jurors' questions and that counsel's performance was constitutionally deficient in agreeing to allow questions, we once again conclude that petitioner's claim fails on the prejudice prong. Petitioner contended below that prejudice should be presumed. As we have concluded, that is not permissible in the post-conviction context under Oregon law, *Ryan*, 338 Or at 295-96, and petitioner has not produced evidence that would permit the conclusion that prejudice should be presumed under the Sixth Amendment. *See id*. at 297-300 (discussing presumed prejudice in rare cases where a criminal defendant is actually or constructively denied counsel).[10]

In his twenty-ninth and thirtieth assignments, petitioner contends that the post-conviction court erred in denying his claim that trial counsel in the 2002 penalty-phase proceeding were ineffective in failing to object to adverse testimony that was not relevant to the factors enumerated in ORS 163.150 and that was admitted in violation of the physician-patient or counselor-patient privileges. OEC 504 (physician-patient); OEC 507 (professional counselor). The post-conviction court denied the claims based on a lack of specificity that the court said "makes it impossible to determine any deficiencies in counsels' performance and impossible to find any resulting prejudice." We have reviewed the record and agree with the post-conviction court's assessment.

In his thirty-first assignment of error, petitioner asserts that the post-conviction court erred in rejecting his

---

[10] In the post-conviction court, petitioner argued that trial counsel was deficient in agreeing to allow jurors to ask questions pursuant to ORCP 58 B(9), contending that, "[t]o fail to *object to any such questions* was to abandon the professional judgment that is required of criminal defense lawyers, and the high potential for imposition of the death penalty made the error doubly egregious." (Emphasis added.) As we understand the argument counsel made below, the failure to "object to any such questions" challenged globally counsel's agreement to allow *any* questions. Petitioner now argues on appeal that trial counsel was inadequate and ineffective in failing object to specific questions that were improper and inherently prejudicial. As we interpret the pleadings and arguments presented to the post-conviction court, they did not include that contention, which we therefore conclude is not preserved for our review. *Hale v. Belleque*, 255 Or App 653, 660, 298 P3d 596, *rev den*, 354 Or 597 (2013) (allegations of the petition frame the issues that a post-conviction court can consider, and a petitioner who fails to raise a claim in a petition for post-conviction relief has waived it and is foreclosed from making arguments on claims not raised in the petition).

claims that trial counsel in the 2002 penalty phase were ineffective in their representation of petitioner regarding the second death-penalty question—"whether there is a probability that the defendant will commit continuing acts of violence that constitute a continuing threat to society." *Former* ORS 163.150(1)(b)(B). In their presentation on that issue, trial counsel elicited testimony from Dr. Craig Haney, a professor of psychology. Haney testified that the "state of the art of predicting whether or not someone is going to do something dangerous in the future" requires consideration of the environment in which the person would be living. Haney described life in the prison setting (in contrast with life outside of prison), including security, the relative unavailability of drugs, the degree of structure, the clear external rules and regulations concerning every facet of daily life, the availability of rewards for good behavior, and the risk of punishment for violating rules. Haney reviewed transcripts of testimony from prior proceedings and conducted interviews to learn petitioner's social history, his personal characteristics and psychological make-up, and his behavior in prison. Haney offered the opinion that, considering those factors and the prison environment, the length of a life sentence, petitioner's "very good" prison record during his preceding 17 years as an inmate, including an absence of predatory behavior, his positive relationship with other inmates and prison staff, petitioner had adjusted to life in prison and would not commit future acts of a criminal nature that would be a continuing threat to prison society.

Petitioner asserted in his post-conviction petition that counsel was ineffective in failing to also consult with and introduce testimony from a risk-assessment expert—an expert in the field of statistical analysis and probability. At the post-conviction hearing, petitioner presented the testimony of Dr. Thomas Reidy, a licensed forensic psychologist who has researched and authored articles on risk assessment of capital offenders since 1998. Reidy offered an opinion, based on actuarial data of serious violence in prisons, that the "base rate" for serious violence in the prison setting by life-sentenced inmate offenders is extremely low and "that the vast majority of life-sentenced inmates

do not commit acts of serious violence in prison."[11] In fact, Reidy testified, the base rate for serious violence in prison among life-sentenced offenders is so low that it is not possible to predict whether a particular person sentenced to life in prison will commit serious violence in prison. That type of evidence was available at the time of petitioner's 2002 penalty-phase trial, and petitioner contended that it could have strengthened the likelihood that the jury would have found that the prosecution had failed to meet its burden to show that, "more likely than not," petitioner would commit future violence in prison.

The post-conviction court rejected petitioner's claim, reasoning that the evidence presented by trial counsel through Haney, although not statistical, took into account many of the same factors as Reidy. The post-conviction court held that counsel's performance in failing to also call a statistical expert was not constitutionally deficient and did not give rise to prejudice.

On appeal, petitioner asserts that data-based testimony, including information about the "base-rate," as presented by Reidy, would have been more persuasive and could have effectively countered the state's expert concerning the risks of prison violence in a person like petitioner, who has an antisocial personality disorder. That evidence, petitioner contends, would have backed up evidence presented by the defense team's expert that the extremely high prevalence of antisocial personality disorder among prisoners means that that status should not be used as a determinant of whether a person will commit acts of violence in a prison setting.

We conclude that the post-conviction court did not err in determining that 2002 trial counsel was not deficient. In assessing the reasonableness of counsel's actions under the Oregon Constitution, we "must make every effort to evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight." *Lichau*, 333 Or at 360. As the court held in *Montez*, in evaluating the adequacy and effectiveness of counsel, we review

_____

[11] Reidy testified that "base rate" refers to "the frequency with which a particular behavior happens in a particular context."

the effectiveness of the representation that counsel provided, not the representation that, in retrospect, could have been provided. *Montez*, 355 Or at 24. The fact that petitioner would, in retrospect, have presented evidence of a future risk of violence in prison in a different way than trial counsel is not a ground for post-conviction relief if counsel acted reasonably in presenting the defense that they did. Although trial counsel could have provided statistical data concerning violence in prison, we are not persuaded that trial counsel was ineffective or deficient in choosing Haney as an expert to address the risk that petitioner would commit acts of violence in prison.

We reach the same conclusion under the federal constitution. The United States Supreme Court has said that there are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client the same way." *Strickland*, 466 US at 689. Petitioner's defense team was entitled to formulate the strategy that was reasonable at the time of its conception. *See Harrington v. Richter*, 562 US 86, 107, 131 S Ct 770, 178 L Ed 2d 624 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."). Haney's testimony provided much the same information that petitioner now asserts should have been presented in the form of statistical analysis. Although petitioner's post-conviction counsel identified a way that evidence concerning the second question could have been developed differently, we conclude that that does not demonstrate that defense counsel failed to exercise reasonable skill and judgment in their representation of petitioner. As the court held in *Krummacher*, 290 Or at 875, the constitution does not afford petitioner a right to a "perfect defense," but allows for the reality that a lawyer "seldom * * * walk[s] away from a trial without thinking of something that might have been done differently." The post-conviction court correctly concluded that trial counsel did not provide inadequate or ineffective assistance in relying on Haney's expertise and in failing to adduce the additional data-based evidence of future dangerousness.

We additionally conclude that petitioner has not established prejudice from the alleged deficiency. Unlike in *Running*, cited by petitioner, in which trial counsel had failed to offer *any* expert testimony on future dangerousness and we held that the failure gave rise to "more than mere possibility" that the outcome of the penalty phase would have been different if an expert had been called, in this case, trial counsel presented extensive persuasive testimony as to the likelihood of petitioner committing future acts of violence that constitute a continuing threat to society. Petitioner has not shown that the presentation of statistical data would have created more than a mere possibility of affecting the result of the penalty-phase proceeding.

We reject petitioner's contention that counsel was ineffective in failing to object to use of the term "future dangerousness" as a shorthand reference to the second jury question, which is a deviation from the words of the statute. *Former* ORS 163.150(1)(b)(B) (1993) ("[W]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.") That shorthand reference is commonly used by the courts. *See Langley*, 363 Or at 508 (describing the second question as "essentially a question of defendant's future dangerousness"). We are not persuaded that all reasonable attorneys would have objected to the term. Nor has petitioner shown that the failure to object resulted in prejudice, given that the jury was properly instructed in the words of the statute.

Finally, we have considered and reject without further discussion petitioner's remaining assignments of error.[12]

---

[12] In his remaining assignments, petitioner makes unpreserved arguments that trial counsel was ineffective in failing to argue to the jury that the prosecution had not presented evidence of "deliberateness" and in failing to object to the use of transcripts in petitioner's 2002 penalty-phase retrial. Petitioner asserts that appellate counsel was deficient in not seeking the disqualification of then-Associate Justice Thomas Balmer from participating in the review of his death sentence. Petitioner asserts that trial and appellate counsel were inadequate and ineffective for failing to raise a proportionality challenge to petitioner's death sentence. Petitioner further asserts that the post-conviction court erred in granting summary judgment on petitioner's claim that trial counsel was inadequate and ineffective for failing to present a speedy-trial claim and

Affirmed.

on petitioner's unpreserved claim that his imprisonment leading up to his 2002 sentence violated the Eighth Amendment and in rejecting petitioner's claim of cumulative error. Petitioner's *pro se* supplemental assignment asserts that trial counsel performed deficiently by failing to seek a directed verdict, raising the unalleged claim that ORS 163.095 and ORS 163.150 were facially invalid for not adequately narrowing the class of defendants eligible for the death penalty.